Jennifer Chang Newell*
Cecilia D. Wang*
Michael Tan*†
R. Orion Danjuma*†
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:      (415) 343-0770
jnewell@aclu.org
cwang@aclu.org
mtan@aclu.org
odanjuma@.org

Linton Joaquin*
Karen C. Tumlin*
Shiu-Ming Cheer*
NATIONAL IMMIGRATION LAW
CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA 90010
T:      (213) 639-3900
joaquin@nilc.org
tumlin@nilc.org
cheer@nilc.org

*Attorneys for Plaintiffs*

Victor Viramontes*
Nicholás Espíritu*
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
T:      (213) 629-2512
vviramontes@maldef.org
nespiritu@maldef.org

Daniel J. Pochoda (Bar No. 021979)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
 T:      (602) 650-1854
dpochoda@acluaz.org

*Additional Co-Counsel on Subsequent Pages*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA DREAM ACT COALITION; JESUS CASTRO-MARTINEZ; CHRISTIAN JACOBO; ALEJANDRA LOPEZ; ARIEL MARTINEZ; and NATALIA PEREZ-GALLEGOS,<br><br>              Plaintiffs,<br><br>     v.<br><br>JANICE K. BREWER, Governor of the State of Arizona, in her official capacity; JOHN S. HALIKOWSKI, Director of the Arizona Department of Transportation, in his official capacity;  and STACEY K. STANTON, Assistant Director of the Motor Vehicle Division of the Arizona Department of Transportation, in her official capacity,<br>              Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |

*Additional Co-Counsel*

Tanya Broder*
NATIONAL IMMIGRATION LAW
CENTER
405 14th Street, Suite 1400
Oakland, CA  94612
T:  (510) 663-8282
*Broder@nilc.org*

Marty Harper (Bar No. 003416)
Thomas K. Irvine (Bar No. 006365)
Andrew S. Jacob (Bar No. 022516)
POLSINELLI SHUGHART PC
One East Washington, Suite 1200
Phoenix, AZ 85004
T:  602.650.2096
*mharper@polsinelli.com*
*tirvine@polsinelli.com*
*ajacob@polsinelli.com*

Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)**
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
T:  (602) 650-1854
*kflood@acluaz.org*
*jlyall@acluaz.org*

Lee Gelernt*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
*lgelernt@aclu.org*

*Pro hac vice application forthcoming
**Admitted pursuant to Ariz. Sup. Ct. R. 38(f)
† Admitted in New York*

*Attorneys for Plaintiffs*

**INTRODUCTION**

1.      This class action lawsuit challenges Arizona Executive Order 2012-06[1] and Arizona's practice of denying driver's licenses to immigrant youth whom the federal government has authorized to remain in the United States under the Deferred Action for Childhood Arrivals ("DACA") program.  Defendants' practice violates the Supremacy Clause and the Equal Protection Clause of the United States Constitution.

2.      This action is brought by the Arizona DREAM Act Coalition and several Individual Plaintiffs, who are young immigrants who were brought to the United States at an early age by their families in hope that they could have a better life in the United States. They have overcome many obstacles and worked diligently in order to succeed in school, to help their families, and to enrich their communities with their individual abilities. These young immigrants are commonly known as "DREAMers" based on proposed federal legislation, the Development, Relief, and Education for Alien Minors ("DREAM") Act.

3.      As the President of the United States has recognized, these young immigrants "are Americans in their heart, in their minds, in every single way but one: on paper."[2]  He explained, "it makes no sense" to deport "[t]hese [] young people who study in our schools, they play in our neighborhoods, they're friends with our kids, they pledge allegiance to our flag."[3]

---

[1] A true and correct copy of Arizona Executive Order 2012-06 is attached as Exhibit 1.
[2] President Barack Obama, Remarks on Immigration Reform, 2012 DAILY COMP. PRES. DOC. 1 (June 15, 2012), *available at* http://www.gpo.gov/fdsys/pkg/DCPD-201200483/pdf/DCPD-201200483.pdf.
[3] *Id.*

4.     On June 15, 2012, the Secretary of the United States Department of Homeland Security ("DHS") announced the new DACA program of administrative immigration relief for young immigrants who came to the United States as children and are present in the country without a formal immigration status.  The DACA program was established to allow these young immigrants to remain in the United States without fear of deportation for a specified, renewable period, and thus continue to contribute to American society.

5.     Under DACA, certain DREAMers are eligible to obtain "deferred action" from the federal government upon meeting specific criteria such as the attainment of a high school diploma and passing a rigorous background check including the absence of a criminal record.  Deferred action is a mechanism used by the federal government to prevent the removal of a noncitizen who would otherwise be subject to deportation, and to allow the noncitizen to remain in the United States for a specified period of time.  Persons granted deferred action under DACA may stay in the United States for a renewable period of two years, are shielded from removal proceedings during that time, and may be granted federal employment authorization and a Social Security Number.

6.     The Individual Plaintiffs and the class they propose to represent are young immigrants residing in Arizona who have been granted deferred action, or will be, pursuant to the DACA program, and have (or will have) employment authorization and a Social Security Number.  It is estimated that there are 1.76 million DACA-eligible youth in the United States and approximately 80,000 residing in Arizona.

7.     All DACA grantees in Arizona are being denied the opportunity to obtain a driver's license pursuant to Defendants' unlawful policies and practices.  On August 15,

2

2012 – the first day DHS began accepting DACA applications – Defendant and Arizona Governor Janice K. Brewer issued Executive Order 2012-06, which states: "the Deferred Action program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants." The Order directs state agencies to take necessary steps to "prevent Deferred Action recipients from obtaining eligibility . . . for any . . . state identification, including a driver's license."

8.     As stated by Defendant Brewer, the Executive Order makes clear that there will be "no drivers [sic] licenses for illegal people,"[4] and in her opinion, "[t]he Obama amnesty plan doesn't make them legally here."[5] Defendant Brewer's Executive Order reflects her apparent disagreement with the federal government's decision to allow young immigrants who qualify under the DACA program to remain in the United States.

9.     Prior to Defendant Brewer's Executive Order 2012-06, the Motor Vehicle Division ("MVD") of the Arizona Department of Transportation ("ADOT") issued driver's licenses to all noncitizens granted deferred action who were otherwise qualified. The MVD routinely accepted federal employment authorization documents, including those presented by noncitizens with deferred action, as evidence of authorized presence in the United States, and it routinely issued driver's licenses to persons presenting such

---

[4] Arizona Channel 12 News Video, Why Did Brewer Issue "Dreamer" Order? (Aug. 15, 2012) (video documenting remarks by Defendant Brewer), *available at* http://www.azcentral.com/video/#/Why+did+Brewer+issue+%27dreamer%27+order%3F/ 1787777903001.

[5] Fox News Latino. Jan Brewer Bars IDs, Benefits for Undocumented Immigrants in Arizona (Aug. 16, 2012), *available at* http://latino.foxnews.com/latino/politics/2012/08/16/brewer-blocks-id-benefits-for-undocumented-immigrants/#ixzz2BKUMfgjM.

[6] A true and correct copy of Arizona Motor Vehicle Division Policy 16.1.4(S) is attached as Exhibit 2.

documents who were otherwise qualified for a license, including noncitizens with deferred action.

10.     The MVD implemented Executive Order 2012-06 on September 18, 2012 by revising its policies to bar the acceptance of the employment authorization documents of DACA recipients as evidence of authorized presence in the United States to establish eligibility for driver's licenses. *See* MVD Policy 16.1.4(S).[6] The MVD continues to accept employment authorization documents from all other noncitizens, including noncitizens who are recipients of deferred action other than DACA recipients.

11.     Arizona's practice of denying driver's licenses to DACA recipients seeks to negate the federal government's decision to authorize DACA-eligible DREAMers to remain in the United States, interferes with the goals and function of the DACA program, and harms and unlawfully discriminates against Individual Plaintiffs and all other similarly situated individuals residing in Arizona.

12.     As a result of their deferred action status, Individual Plaintiffs are (or will be) authorized by the federal government to be present in the United States for a renewable period of two years, and are (or will be) federally authorized to work.  Despite this federal authorization, under Defendants' unlawful practice Individual Plaintiffs and others like them who are granted DACA are deemed "unauthorized" by the State of Arizona.  As a result Individual Plaintiffs are unable to obtain licenses to drive in Arizona despite being otherwise eligible for such licenses, making it difficult, if not impossible, for them to accomplish essential aspects of daily life, such as going to the grocery store, attending

---

[6]  A true and correct copy of Arizona Motor Vehicle Division Policy 16.1.4(S) is attached as Exhibit 2.

church, bringing their children or younger siblings to medical appointments or to school, attending school, and maintaining or obtaining productive employment.

13.   Defendants' practice of denying licenses to DACA grantees violates the Supremacy Clause of the United States Constitution because it is preempted by federal immigration law and the federal government's exclusive authority to regulate immigration.

14.   Defendants' practice also violates the Fourteenth Amendment Equal Protection Clause because it denies driver's licenses to DACA recipients without any valid justification, including even a rational basis.

15.   Plaintiffs therefore bring the instant action for permanent injunctive and declaratory relief from Arizona's unlawful practice.

## JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims under the U.S. Constitution.  The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

17.   Venue is proper in this district under 28 U.S.C. § 1391(b).  All Defendants are sued in their official capacity and their official places of business are all located within this District.  All of the events giving rise to this Complaint occurred within this District.

## PARTIES

**Plaintiffs**

18.   The **Arizona DREAM Act Coalition ("ADAC")** is an immigrant youth-led organization whose mission is to promote the educational success of immigrant youth, increase civic engagement and community service, and advocate for the passage of the

DREAM Act at the national level.  Since 2009, ADAC has focused its organizing and advocacy efforts on increasing voter participation in Arizona's Latino community, integrating immigrant youth in Arizona's educational system and economy to the fullest extent possible, and advocating for immigrant rights.  ADAC has an active statewide membership of several hundred individuals, including over 30 core volunteers, and works in coalition with seven chapter organizations.  Arizona's decision to deny driver's licenses to DACA grantees has adversely impacted both ADAC and its members.  Most of ADAC's members are DACA recipients who have been issued Social Security Numbers and are authorized to work in the country, or have applications for DACA and work authorization pending.  As a result of Arizona's denial of driver's licenses, many of ADAC's members are unable to drive legally in Arizona, making it difficult or impossible for them to function normally in the community – including getting to and from work and school, taking children to school or to the doctor, and obtaining employment.  Additionally, Arizona's decision impedes ADAC's ability to carry out its mission, as ADAC has been forced to divert its limited resources from its primary advocacy projects in order to assist impacted individuals, such as responding to inquiries and requests for assistance.  Because ADAC members are unable to obtain driver's licenses, transporting members and supporters to events, including meetings in other regions of Arizona and out-of-state conferences, is more costly and limits members' participation.  ADAC regularly draws new members from these events, but is forced to limit its attendance because of members' inability to drive, which restricts the growth and functioning of the

organization.  ADAC recently acquired a vehicle, but is largely unable to use it because of Arizona's denial of driver's licenses to DACA grantees.

19.     **Jesus Castro-Martinez** is a 26-year-old resident of Phoenix who came to the United States at age 15 from Mexico and has lived in Arizona since that time.  On October 3, 2012, he was granted deferred action under the DACA program, and shortly thereafter received an employment authorization document ("EAD") and Social Security Number. Mr. Castro has a fiancée who is a U.S. citizen, and a brother and sister who are lawful permanent residents.  He received his associate degree from Scottsdale Community College in 2010 and hopes to return to school to continue his studies and become an interior designer.  Mr. Castro currently works at a spa in North Scottsdale.  Because his work may require driving, he may be prevented from taking a promotion or even lose his job because he is ineligible for a driver's license.  In October 2012, Mr. Castro attempted to apply for an Arizona driver's license at the MVD office in Scottsdale.  MVD officials informed him that because his EAD was obtained through the DACA program, it could not establish his authorized presence in the United States, and that he was therefore ineligible for a driver's license.

20.     **Christian Jacobo** is a 19-year-old resident of Phoenix who came to the United States from Mexico when he was 12 years old and has lived in Arizona since that time. On October 2, 2012, he was granted deferred action under the DACA program, and subsequently received an EAD and Social Security Number.  Mr. Jacobo currently lives with his sister and her family.  He obtained his General Education Development ("GED") certificate from La Joya Community High School in Avondale, Arizona, and hopes

eventually to earn his bachelor's degree and become a physical therapist or chiropractor. Mr. Jacobo needs a driver's license in order to earn a living, among other reasons. In October 2012, Mr. Castro attempted to apply for an Arizona driver's license at an MVD office in Phoenix. MVD officials informed him that because his EAD was obtained through the DACA program, it could not establish his authorized presence in the United States, and that he was therefore ineligible for a driver's license.

21.     **Alejandra Lopez**, now 19 years old, has grown up virtually her entire life in the United States. She is originally from Mexico, but has been in the United States since she was four years old. Ms. Lopez graduated from high school in Arizona, and considers Arizona her home. She is married to a U.S. Citizen and has a U.S. citizen child. She is a primary caregiver for her young child as well as for her two U.S. citizen brothers who are four and 15 years old, respectively. In October 2012, she was granted deferred action under the DACA program. On October 9, 2012, she received an EAD, and on October 15, 2012, she received a Social Security Number. On October 13, 2012 Ms. Lopez went to her local MVD to apply for a driver's license. The MVD staff person looked at her EAD and told her that she was not eligible for a license. Ms. Lopez understands that Executive Order 2012-06 precludes her from using her EAD to get a license. As a mother and caregiver, Ms. Lopez needs an Arizona driver's license for multiple reasons, such as to drive her brothers to and from school and manage various household errands, including getting groceries or taking her child to the doctor. Because her husband works at night, he is often unavailable to give Ms. Lopez rides she needs. Not having a driver's license has also impeded her ability to find employment. Ms. Lopez was offered an interview for a

customer service job in Tempe but was forced to turn it down due to the fact that she would be unable to commute to work without a driver's license. In addition, she needs a driver's license to use as a secure form of identification.

22.    **Ariel Martinez** is an 18-year-old resident of Youngtown, Arizona. He came to the United States from Mexico when he was four years old. He has lived in Arizona since then and is currently a student at Glendale Community College in Glendale, Arizona. He aspires to attend the Conservatory of Recording Arts and Sciences in order to pursue a career in the recording business. On October 15, 2012, Mr. Martinez was granted deferred action under the DACA program. Around October 17, 2012, he received an EAD, and around October 19, 2012, he received a Social Security Number. Defendants' policy imposes a significant hardship on Mr. Martinez's ability to get to his college classes and sports activities, which include coaching high school soccer. Mr. Martinez understands that Executive Order 2012-06 precludes him from obtaining a license.

23.    **Natalia Perez-Gallegos** is 18 years old, and resides in Phoenix, Arizona. Ms. Perez-Gallegos came to the United States from Mexico when she was five years old. In October 2012, she was granted deferred action under the DACA program and received her EAD and her Social Security Number. Ms. Perez-Gallegos attended Glendale Community College and Estrella Mountain Community College, where she completed a year of nursing pre-requisites, and intends to go back to school to complete her Associate Degree in registered nursing. After Ms. Perez-Gallegos received her EAD and Social Security Number she began working as a medical assistant, and she is planning to go back to school in January 2013. Ms. Perez-Gallegos is concerned that she will not be able to get back and

forth from school and work without a driver's license.  In October 2012, after receiving

DACA status, Ms. Perez-Gallegos attempted to apply for an Arizona driver's license at the

MVD offices in Avondale and on 51st Street in Phoenix, Arizona.  At both locations she

was told by MVD officials that, because her EAD was obtained through the DACA

program, she was ineligible for a driver's license.

        //

        //

**Defendants**

        24.     At all times relevant to this action, **Defendant Janice K. Brewer** has been the

Governor of the State of Arizona.  Defendant Brewer issued the Executive Order being

challenged in this case.  Defendant Brewer is sued in her official capacity.

        25.     At all times relevant to this action, **Defendant John S. Halikowski** has been the

Director of ADOT, which is the agency with authority to license drivers and enforce motor

vehicle statutes.  Ariz. Rev. Stat. § 28-332(B).  As Director, Defendant Halikowski "is

responsible for the administration of the department" and has the authority to adopt rules

he deems necessary to carry out ADOT's responsibilities.  Ariz. Rev. Stat. § 28-331; *see

also* Ariz. Rev. Stat. § 28-366.  Defendant Halikowski is sued in his official capacity.

        26.     At all times relevant to this action, **Defendant Stacey K. Stanton** has been the

Assistant Director of the MVD, which is a division of the ADOT.  *See* Ariz. Rev. Stat. §

28-332(C).  MVD is the division of the ADOT charged with responsibility for licensing

drivers.  Defendant Stanton is responsible for the administration of all Motor Vehicle

Departments in the state of Arizona.  Defendant Stanton issued policies implementing

Executive Order 2012-06 and instructing that employment authorization documents issued to DACA recipients may not be used to establish eligibility for an Arizona driver's license. *See* MVD Policy 16.1.4(S) (rev. Sept. 18, 2012).  Defendant Stanton is sued in her official capacity.

//

//

## BACKGROUND

**Deferred Action**

27.     Deferred action is a longstanding form of prosecutorial discretion in which the federal government decides, based on humanitarian or other reasons, to refrain from seeking an individual noncitizen's removal and to authorize her continued presence in the United States.  A grant of deferred action indicates that the noncitizen's presence in the United States is known to the federal government, and that the federal government has made a discretionary determination, based on a review of the individual's case, not to remove her but rather to allow her to remain in the United States during a specified period.

28.     Moreover, recipients of deferred action are eligible to receive employment authorization under federal law upon a showing of economic necessity.  *See* 8 C.F.R. § 274a.12(c)(14).

29.     The Secretary of Homeland Security's authority to grant deferred action to otherwise removable noncitizens derives from her statutory authority over "administration and enforcement" of the Immigration and Nationality Act ("INA"), including the power to

"perform such . . . acts as [s]he deems necessary for carrying out [her] authority." 8

U.S.C. §§ 1103(a)(1), 1103(a)(3).  That discretion granted by Congress includes the

discretion to "decide whether it makes sense to pursue removal at all." *Arizona v. United*

*States*, 132 S. Ct. 2492, 2499 (2012).  Deferred action is simply one example of the federal

government's exercise of the discretionary authority granted by Congress in immigration

matters.  Indeed, Congress repeatedly has recognized in the INA and other legislation that

the Executive Branch has discretion to grant deferred action under the immigration laws.

30.    For decades, the federal government has used deferred action to authorize

numerous groups of immigrants to live and work in the United States for a temporary

period.  Deferred action has been made available to certain victims of human trafficking

and sexual exploitation; to certain relatives of victims of terrorism; to surviving family

members of a legal permanent resident member of the armed forces; to spouses and

children of U.S. citizens or lawful permanent residents who are survivors of domestic

violence; to certain surviving spouses of U.S. citizens; to foreign students affected by

Hurricane Katrina; and to applicants for certain types of visas.  In addition, federal

immigration authorities may grant deferred action on an individual basis, including, for

example, to a person whose continued presence is desired by law enforcement for an

ongoing investigation.

31.    Immigrant youth brought to the country as children are thus only the most recent

beneficiaries of deferred action.

32.    The rationale for the DACA program is consistent with the federal

government's longstanding use of deferred action to permit noncitizens to remain in the

country.  In announcing the DACA program, the DHS Secretary explained that "[o]ur Nation's immigration laws …. are not designed to be blindly enforced without consideration given to the individual circumstances of each case.  Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language.  Indeed, many of these young people have already contributed to our country in significant ways."[7]

33.    Similarly, the President stated that the federal government decided to make deferred action available to DREAMers because  "it makes no sense . . . to expel these young people who want to staff our labs or start new businesses or defend our country."[8] He explained, these individuals are "talented young people, who, for all intents and purposes, are Americans – they've been raised as Americans, understand themselves to be part of this country."

34.    The DACA program is intended "to lift the shadow of deportation from these young people" and "to mend our Nation's immigration policy to make it more fair, more efficient, and more just."[9]

35.    Under DACA, young immigrants who entered the United States as children and who meet educational and residency requirements may apply for deferred action. Noncitizens are eligible for DACA if they: a) were under the age of 31 as of June 15,

---

[7] Janet Napolitano, Memorandum on Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children 2 (June 15, 2012), *available at* http://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf.
[8] President Barack Obama, Remarks on Immigration Reform, 2012 DAILY COMP. PRES. DOC. 1 (June 15, 2012), *available at* http://www.gpo.gov/fdsys/pkg/DCPD-201200483/pdf/DCPD-201200483.pdf.
[9] *Id.*

2012; b) came to the United States before reaching their 16th birthday; c) have continuously resided in the United States since June 15, 2007, up to the present time; d) were physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action with United States Citizenship and Immigration Services ("USCIS"); e) entered without inspection before June 15, 2012, or had an expired lawful immigration status as of June 15, 2012; f) are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and g) have not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.[10]

36.     The DACA application process includes extensive criminal background checks. Under the DACA program, deferred action is available for a period of two years, subject to renewal, and applicants who are approved may obtain work authorization, and if such authorization is granted, a Social Security Number.[11]

37.     The federal government routinely grants work authorization to deferred action recipients, including DACA recipients.  Noncitizens granted work authorization are issued federal employment authorization documents or EADs, such as I-766 cards.

---

[10] USCIS, Consideration of Deferred Action for Childhood Arrivals Process (Sept. 14, 2012), *available at*
http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnextchannel=3a4dbc4b04499310VgnVCM100000082ca60aRCRD&vgnextoid=3a4dbc4b04499310VgnVCM100000082ca60aRCRD.
[11] *See id.*

14

38.     Noncitizens granted deferred action pursuant to the DACA program are thus authorized to be present in the United States during the two-year deferred action period, and during any extensions of the grant.

39.     DACA recipients are likewise lawfully present during the deferred action period.  USCIS has explained that under the DACA program, "[i]f your case is deferred, you will not accrue unlawful presence during the period of deferred action."[12]  According to USCIS, "an individual whose case is deferred will not be considered to be accruing unlawful presence in the United States during the period deferred action is in effect."[13]

40.     As of November 15, 2012, immigrant youth had filed nearly 300,000 DACA applications with USCIS, including over 11,000 applications from Arizona residents.  Although the vast majority of those applications are still in process, USCIS has granted deferred action to at least 53,273 individuals nationwide pursuant to the DACA program.[14]

**Arizona Driver's License Practice**

41.     Both before and after the federal government announced that immigrant youth who came to the country as children would be eligible for deferred action under the DACA program, Arizona law provided that an applicant for an instruction permit, driver's license, or identification card must submit proof that the applicant's "presence in the United States

---

[12] *Id.* at Q5.
[13] *Id.* at Q1; *see also id.* at Q6.
[14] USCIS, Deferred Action for Childhood Arrivals Process (Aug. 15 – Nov. 15, 2012) *available at* http://www.uscis.gov/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/Static_files/2012-1116%20DACA%20Monthly%20Report.pdf

is authorized under federal law." Ariz. Rev. Stat. §§ 28-3153(D), 28-3158(C), 28-3165(F).

42.     Specifically, Ariz. Rev. Stat. § 28-3153(D) provides that "[n]otwithstanding any other law, the department shall not issue to or renew a driver license or nonoperating identification license for a person *who does not submit proof satisfactory to the department that the applicant's presence in the United States is authorized under federal law.*" *Id.* § 28-3153(D) (emphasis added). The statute further provides that the ADOT shall establish procedures for "[v]erification that the applicant's presence in the United States is authorized under federal law." *Id.* § 28-3153(D)(1).

43.     The policy of the MVD *prior* to the announcement of the DACA program was that an employment authorization document was sufficient to prove that an applicant's presence was "authorized under federal law." *See* MVD, Primary and Secondary Forms of Acceptable Documentation (rev. Nov. 30, 2010). Because deferred action recipients are eligible for employment authorization under federal law, *see* 8 C.F.R. § 274a.12(c)(14), Defendants routinely issued driver's licenses to deferred action recipients, as well as other noncitizens submitting EADs as proof of "authorized" presence. Thus, under Defendants' previous policy, DACA recipients would have been able to meet the "authorized" presence requirement by submitting their employment authorization documents.

44.     However, on August 15, 2012 – the very same day USCIS began accepting DACA applications – Defendant Brewer issued Executive Order 2012-06, instructing state agencies to take necessary steps to "prevent Deferred Action recipients from obtaining eligibility, . . . for any . . . state identification, including a driver's license." *See* Arizona

Executive Order 2012-06.  According to its title, the Executive Order purports to "Re-affirm [the] Intent of Arizona Law In Response to the Federal Government's Deferred Action Program." *Id.*

45.     The Executive Order states that "Arizona Revised Statutes 28-3153 prohibits the ADOT from issuing a drivers [sic] license or nonoperating identification license unless an applicant submits proof satisfactory to ADOT that the applicant's presence in the United States is authorized under federal law." *Id.*  The Executive Order further states that "the Deferred Action program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants" and that "[t]he issuance of Deferred Action or Deferred Action USCIS employment authorization documents to unlawfully present aliens does not confer upon them any lawful or authorized status." *Id.*  The Executive Order thus provides that deferred action recipients are unable to meet the "authorized" presence requirement for driver's licenses and identification.

46.     In a public statement made the same day the Executive Order was issued, Defendant Brewer stated that the Executive Order was intended to clarify that there would be "no drivers [sic] licenses for illegal people."[15]  Defendant Brewer stated: "They are here illegally and unlawfully in the state of Arizona and it's already been determined that you're not allowed to have a driver's license if you are here illegally."[16]

---

[15] Arizona Channel 12 News Video, Why Did Brewer Issue 'Dreamer' Order? (Aug. 15, 2012), *available at* http://www.azcentral.com/video/#/Why+did+Brewer+issue+%27dreamer%27+order%3F/1787777903001, (video documenting remarks by Defendant Brewer).

[16] Jan Brewer Bars IDs, Benefits for Undocumented Immigrants in Arizona, Fox News Latino (Aug. 16, 2012), http://latino.foxnews.com/latino/politics/2012/08/16/brewer-blocks-id-benefits-for-

47.     To implement the Executive Order's directive, the Arizona MVD revised its policy regarding acceptance of employment authorization documents as proof of authorized presence.  Under the new policy, employment authorization documents presented by DACA recipients will not be accepted as proof of authorized presence for a driver's license or identification card.  *See* MVD Policy 16.1.4(S) (rev. Sept. 18, 2012).  However, for all other recipients of deferred action (i.e., other than DACA beneficiaries), employment authorization documents will continue to be accepted as proof of authorized status.  *See* MVD, Primary and Secondary Forms of Acceptable Documentation (rev. Sept. 18, 2012).

48.     Arizona's practice of denying driver's licenses to DACA recipients is an outlier in the 50 states.  The rules in an overwhelming majority of states make all deferred action recipients with employment authorization and Social Security Numbers eligible for driver's licenses.  Indeed, Plaintiffs are aware of only two other states, apart from Arizona, that have announced an intent to preclude DACA recipients from eligibility for a driver's license.

**Defendant's Policy Harms Plaintiffs**

49.     Defendants' policy of denying driver's licenses to DACA recipients, including Plaintiffs, pursuant to Executive Order 2012-06 and its implementing policies, is currently in effect.  Defendants are applying Executive Order 2012-06 to deny driver's licenses to DACA recipients, including Plaintiffs.

undocumented-immigrants/.

50.     As a result, Defendants, acting under the color of state law, are violating Plaintiffs' rights under the U.S. Constitution by continuing to enforce Arizona's practice of denying driver's licenses to DACA recipients, including Plaintiffs.

51.     Moreover, Defendants' practice of denying driver's licenses to DACA recipients imposes onerous restrictions on the daily lives of the Individual Plaintiffs and members of Plaintiff ADAC.

52.     The ability to drive is, in most areas of the United States, a necessity of modern life.  Driving is essential to the ability to work, particularly in Arizona.  U.S. Census Bureau statistics indicate that over 87 percent of Arizonans and over 86 percent of workers nationwide commute to work by car.  In contrast, only two percent of all Arizonan workers and five percent of workers nationwide commute to work by public transportation.  Denying driver's licenses to DACA recipients in Arizona severely frustrates their ability to obtain employment and achieve economic self-sufficiency.  Indeed, the necessity of driving to a place of employment and/or school is so important that Arizona provides licenses in a diverse range of circumstances.  For example, Arizona provides a restricted license allowing such use of a motor vehicle to many individuals who are otherwise denied the right to operate a motor vehicle.  *See, e.g.,* Ariz. Rev. Stat. § 28-4145(A) (driving restriction based on lack of insurance verification).

53.     Arizona also allows those convicted of driving under the influence to do so if their vehicle has an ignition interlock device.  *Id.* § 28-1402.

54.     Defendants' actions and practices are causing substantial irreparable harm to Individual Plaintiffs and to ADAC's members.  Because they are not licensed to drive,

they are, inter alia, prevented from being able to drive legally in order to go to work, school, church, medical appointments; to take their children or younger siblings to school or medical appointments; to take on employment requiring a driver's license; and to conduct many basic activities of everyday life.  In order to manage these basic activities of daily life, Individual Plaintiffs and ADAC's members are forced to rely on rides from others, or risk criminal penalties and fines by driving without a license.  Individual Plaintiffs and ADAC's members are also harmed by having an unconstitutional policy enforced against them.

55.    In addition, Defendants' unlawful practice harms ADAC's ability to carry out its mission and forces it to divert resources to efforts from its primary advocacy projects in order to assist members who are adversely affected by the inability to obtain a driver's license.  Defendants' practice also harms both ADAC as an organization and its individual members by limiting the ability of ADAC's members to travel to events related to ADAC's mission and making such travel more costly.

56.    Thus, wrongful denial of a driver's license to Individual Plaintiffs and ADAC's members causes irreparable harm.  Such harm is irreparable because no reasonable remedy can make a person whole after they have been denied a license for a period of time.

57.    If Executive Order 2012-06 and related practices are not enjoined, Plaintiffs will continue to suffer irreparable injury and continue to be hampered in conducting these basic activities of everyday life.

58.    There is an actual and substantial controversy between Plaintiffs and Defendants.

59.     Plaintiffs have no plain, speedy, and adequate remedy at law against Executive Order 2012-06 and related practices other than the relief requested in this Complaint.

60.     By enforcing Executive Order 2012-06 to deny driver's licenses to Plaintiffs, Defendants are denying Plaintiffs rights secured to them under the U.S. Constitution and laws.

61.     Plaintiffs are entitled to a declaration that Executive Order 2012-06 and its implementing policies are unconstitutional as applied to deny driver's licenses to DACA recipients, and to a preliminary and permanent injunction enjoining Defendants from so denying such licenses.

**Defendants' Policy is Preempted By Federal Law**

62.     Article VI, clause 2, of the United States Constitution, known as the Supremacy Clause, provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

63.     Pursuant to the Supremacy Clause, federal law preempts state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

64.     The federal government has sole and exclusive power to regulate immigration. The federal government's exclusive power over immigration matters is inherent in the nation's sovereignty, and derives from the U.S. Constitution's grant to the federal

government of the power to "establish an uniform Rule of Naturalization," *id.* art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id.* art. I, § 8, cl. 3.

65.     As part of its immigration power, the federal government has exclusive authority to enact and to enforce regulations concerning which noncitizens to admit, exclude, remove, or allow to remain in the United States.  The federal government also has exclusive authority over the terms and conditions of a noncitizen's stay in the United States.  Further, the federal government has exclusive authority to classify noncitizens, which includes determining the categories of noncitizens who are granted federal authorization to remain in the United States.  In contrast, state governments have none of these powers.

66.     Pursuant to its powers, the federal government has established a comprehensive system of laws, regulations, procedures, and administrative agencies that determine, subject to judicial review, whether and under what conditions a noncitizen may enter and live in the United States, when a noncitizen may be subject to removal, and when a noncitizen may be eligible for relief from removal, either temporarily or permanently.

67.     In the INA, 8 U.S.C. §1101, *et seq.*, Congress has delegated to the federal Executive broad discretion over the manner of the execution of the immigration laws, including the manner of their enforcement.  That discretion includes the discretion to decide not to pursue the removal of a noncitizen who may be removable and to authorize such persons to remain in the United States.  One way in which the Executive exercises its discretionary authority is by granting noncitizens "deferred action," which allows them to remain in the United States for a period of time.

68.     Under the federal immigration system, deferred action recipients, including DACA grantees, are authorized to remain in the United States for the period of the deferred action grant.  Deferred action recipients, including DACA grantees, who are granted employment authorization are authorized not only to reside in the United States but to work here. Deferred action recipients, including DACA grantees, are present in the United States with legal authorization and are not unlawfully present.

69.     Executive Order 2012-06 and its implementing policies impermissibly regulate immigration by, inter alia, creating a new, state-based classification of noncitizens that treats DACA recipients as though they were unauthorized and unlawfully present.

70.     Executive Order 2012-06 and its implementing policies, by denying driver's licenses and state-issued identification cards, further impermissibly regulate immigration because, inter alia, they impose immigration-related burdens and penalties on noncitizens whose presence in the United States is authorized by the federal government, and in a manner not contemplated by federal law.

71.     Executive Order 2012-06 and its implementing policies denying DACA recipients driver's licenses conflicts with, frustrates, and serves as an obstacle to federal immigration law, goals, and policies of authorizing DACA recipients to live and work in the United States, to come out of the shadows, and to participate as full members of our nation's communities.

**Defendants' Policy Violates Equal Protection**

72.     The Defendants' decision to single out and deny driver's licenses to individuals granted deferred action under the DACA program while granting licenses to all other

individuals granted deferred action or other forms of temporary authorization to remain in the United States does not rationally further any state goal. Instead, the singling out of DACA grantees appears to reflect disagreement with President Obama's DACA policy, an intent to target these noncitizens on the basis of their alienage or immigration status, and a rejection of their federally authorized presence.

73.     Executive Order 2012-06 states that the purpose for denying driver's licenses to individuals granted deferred action is to prevent "unlawfully present aliens" from "inappropriately gaining access to taxpayer funded benefits and state identification" and to save money for the state. These alleged state purposes are not a valid justification for the Executive Order.

74.     As set forth above, persons granted deferred action are not unlawfully present. Rather, they have been granted authorization to remain in the United States by federal immigration officials for a certain time period, and are eligible to apply to work in the United States.

75.     The state's claim that denying driver's licenses to individuals granted deferred action is necessary to save the state money is not rational. Denying driver's licenses to any group of individuals would save on administrative costs. There is no valid justification for singling out DACA grantees on cost grounds.

76.     In fact, Arizona charges application fees for driver's licenses which at a minimum serves to defray processing costs. For example, if each of the estimated of 80,000 individuals eligible for DACA in Arizona were granted DACA and applied for

driver's licenses, Arizona could accrue $2 million from the $25 application fee for driver's licenses charged to individuals under the age of 40.

77.     Ensuring that all drivers can obtain validly issued driver's licenses promotes public safety for numerous reasons.  For example, it ensures that drivers in a state are trained and tested on the state's traffic laws.  As a further example, it facilitates access to insurance that can protect all drivers in case of an accident.  In addition, it helps ensure that police can accurately identify individuals that they stop and that all drivers in Arizona are accountable for their driving records.

## CLASS ACTION ALLEGATIONS

78.     The Individual Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  The class, as proposed by Plaintiffs, consists of all persons residing in Arizona who are, or will be granted deferred action, employment authorization, and a Social Security Number as a result of the DACA program and who are, or will be, ineligible for an Arizona driver's license as a result of Executive Order 2012-06 and related practices.

79.     The requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are met here, in that the class is so numerous that joinder of all class members is impracticable.  Indeed, an estimated 80,000 DACA-eligible youth live in Arizona alone.

80.     There are questions of law and fact common to all class members including: whether Executive Order 2012-06, as implemented, violates the Supremacy Clause and the Equal Protection Clause of the U.S. Constitution.

81.     The claims of the Individual Plaintiffs are typical of the proposed class.  The Individual Plaintiffs are all ineligible for an Arizona driver's license as a result of Executive Order 2012-06 and implementing policies, which bar DACA recipients from establishing authorized presence in the United States based on their employment authorization documents.

82.     All of the Individual Plaintiffs will fairly and adequately represent the interests of all members of the proposed class, and seek relief on behalf of the class as a whole, and have no interests antagonistic to other members of the class.  The Individual Plaintiffs are also represented by *pro bono* counsel, including the ACLU Foundation Immigrants' Rights Project, the Mexican American Legal Defense and Educational Fund, the National Immigration Law Center, the ACLU of Arizona, and Polsinelli Shughart PC, who collectively have extensive experience in class action litigation, including litigation regarding the rights of immigrants and constitutional law.

83.     Finally, Defendants have acted and will act on grounds generally applicable to the class in enforcing Executive Order 2012-06, thereby making final injunctive relief appropriate with respect to the class as a whole.

## FIRST CLAIM FOR RELIEF
**(Supremacy Clause, Article VI, Clause 2, of the United States Constitution; 42 U.S.C. § 1983)**

84.     Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

85.     The Supremacy Clause, Article VI, Clause 2, of the U.S. Constitution, mandates that federal law preempts state law in any area over which Congress expressly or impliedly

has reserved exclusive authority or which is constitutionally reserved to the federal government, including where state law conflicts or interferes with federal law.

86.     In classifying DACA recipients as ineligible for driver's licenses and unauthorized to be present in the United States, Executive Order 2012-06 and its implementing polices are preempted by federal law for multiple reasons.

87.     Executive Order 2012-06 and its implementing policies are preempted because they are an impermissible state regulation of immigration.  Through Executive Order 2012-06 and its implementing policies, Arizona has created its own state classification of noncitizens whose presence in the United States is "authorized," and erroneously classified DACA recipients as lacking federal authorization to remain in the United States. Arizona's creation of its own immigration classification impermissibly intrudes on the federal government's exclusive authority to regulate immigration, and therefore violates the Supremacy Clause.

88.     Executive Order 2012-06 and its implementing policies are further preempted because they conflict with, frustrate, and serve as an obstacle to federal immigration law, goals, and policies.  Arizona's misclassification of DACA recipients as not being "authorized" to be present in the United States directly and fundamentally conflicts with federal law, in violation of the Supremacy Clause.

89.     Executive Order 2012-06 and its implementing policies are also preempted because, inter alia, they impose immigration-related burdens and penalties on noncitizens whose presence in the United States is authorized by the federal government, in violation of the Supremacy Clause.

90.     Because Executive Order 2012-06 and its implementing policies are preempted by federal law, they violate the Supremacy Clause.

91.     Further, for all of the same reasons described above, Ariz. Rev. Stat. §§ 28-3153(D), 28-3158(C), and 28-3165(F) are similarly preempted by federal law and unconstitutional to the extent they compel Executive Order 2012-06 and its implementing policies.

92.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

## SECOND CLAIM FOR RELIEF

**(Equal Protection Clause, Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

93.     The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

94.     Because Arizona's Executive Order 2012-06 and related policies and practices bar individuals granted deferred action under the DACA program from receiving state driver's licenses, they violate the Equal Protection Clause of the Fourteenth Amendment.

95.     Executive Order 2012-06 constitutes impermissible discrimination by state officers and officials against certain noncitizens on the basis of alienage and deprives them of equal protection of the laws within the meaning of the Fourteenth Amendment to the U.S. Constitution.

96.     Defendants cannot establish that Executive Order 2012-06 and related policies and practices have any valid justification, including even a rational basis.

97.     Plaintiffs move for relief on this claim directly under the Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.     A preliminary and permanent injunction enjoining Defendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them from implementing or enforcing the state's illegal policy and practice of denying driver's licenses to Deferred Action for Childhood Arrivals grantees;

B.     A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Arizona's policy and practice of denying driver's licenses to Deferred Action for Childhood Arrivals grantees is unlawful and invalid;

C.     An order awarding Plaintiffs costs of suit, and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law;

//

//

//

1    D.  Such other and further relief as the Court deems equitable, just, and proper.

2

3    Dated this 29th day of November, 2012          By /s/ Andrew S. Jacob
                                                         Marty Harper
4    Linton Joaquin                                     Thomas K. Irvine
     Karen C. Tumlin                                    Andrew S. Jacob
5    Shiu Ming Cheer                                    POLSINELLI SHUGHART PC
     NATIONAL IMMIGRATION LAW                           One East Washington, Suite 1200
6    CENTER                                             Phoenix, AZ 85004
     3435 Wilshire Boulevard, Suite 2850               T:  (602) 650.2096
7    Los Angeles, CA  90010                            F:  (602) 264.7033
     T:  (213) 639-3900                                 mharper@polsinelli.com
8    F:  (213) 639-3911                                 tirvine@polsinelli.com
     Joaquin@nilc.org                                   ajacob@polsinelli.com
9    Tumlin@nilc.org
     Cheer@nilc.org

10

11   Victor Viramontes                                 Jennifer Chang Newell
     Nicholas Espiritu                                 Cecillia D. Wang
12   MEXICAN AMERICAN LEGAL                            Michael Tan
     DEFENSE AND EDUCATIONAL                           R. Orion Danjuma
13   FUND                                              AMERICAN CIVIL LIBERTIES
     634 S. Spring Street, 11th Floor                  UNION FOUNDATION
14   Los Angeles, CA  90014                            IMMIGRANTS' RIGHTS PROJECT
     T:  (213) 629-2512                                39 Drumm Street
15   F:  (213) 629-0266                                San Francisco, CA 94111
     vviramontes@MALDEF.org                            T:  (415) 343-0770
16   nespiritu@MALDEF.org                              F:  (415) 395-0950
                                                        jnewell@aclu.org
17                                                      cwang@aclu.org
     Tanya Broder                                       mtan@aclu.org
18   NATIONAL IMMIGRATION LAW                          odanjuma@aclu.org
     CENTER
19   405 14th Street, Suite 1400
     Oakland, CA  94612                                Lee Gelernt
20   T:  (510) 663-8282                                AMERICAN CIVIL LIBERTIES
     F:  (510) 663-2028                                UNION FOUNDATION
21   Broder@nilc.org                                   IMMIGRANTS' RIGHTS PROJECT
                                                        125 Broad St., 18th Floor
22   Daniel J. Pochoda                                 New York, NY 10004
     Kelly J. Flood                                    T:  (212) 549-2660
23   James Duff Lyall                                  F:  (212) 549-2654
     ACLU FOUNDATION OF ARIZONA                        lgelernt@aclu.org
24   3707 North 7th Street, Suite 235
     Phoenix, AZ 85014
25   T:  (602) 650-1854
     F:  (602) 650-1376
26   dpochoda@acluaz.org
     kflood@acluaz.org
27   jlyall@acluaz.org

28                              Attorneys for Plaintiffs