**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Dream Act Coalition; Jesus Castro-Martinez; Christian Jacobo; Alejandro Lopez; Ariel Martinez; and Natalia Perez-Gallagos,<br><br>Plaintiffs,<br><br>v.<br><br>Janice K Brewer, et al.,<br><br>Defendants. | No. CV-12-02546-PHX-DGC<br><br>**ORDER** |

Following a discovery conference call with the Court on December 6, 2013, and at the Court's direction, the parties filed briefs regarding application of the deliberative process and attorney-client privileges. Plaintiffs seek to compel the production of documents and testimony concerning the policy of the Governor's Office and the Arizona Department of Transportation ("ADOT") to deny driver's licenses to individuals granted deferred action status under the 2012 Deferred Action for Childhood Arrivals ("DACA") program. Doc. 210. Plaintiffs have submitted Defendants' privilege log and portions of deposition transcripts in which Defendants assert that certain material is privileged. Defendants argue that both the documents in the log and testimony about those documents are protected by the attorney-client privilege, work product doctrine, and the deliberative process privilege. Doc. 209.

For ease of analysis, the contested documents are divided into two categories:

(1) documents for which Defendants assert only the deliberative process privilege, and (2) documents for which Defendants assert the attorney-client privilege. Plaintiffs do not challenge the assertion of the work product doctrine.

**I.     Deliberative process privilege.**

Defendants' privilege log (Doc. 210-2) identifies 174 documents as protected only by the deliberative process privilege. For the reasons stated below, Plaintiffs' motion to compel production of these documents will be granted.

**A.     Legal Standard.**

Federal common law recognizes a deliberative process privilege. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The privilege rests on the fact that officials will not communicate candidly among themselves if each remark could be subject to discovery. The privilege seeks to enhance the quality of government by promoting open and frank exchanges among government decision-makers. For the privilege to apply, a document must meet two threshold requirements. "First, the document must be predecisional – it must have been generated before the adoption of an agency's policy or decision . . . . Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies. Purely factual material that does not reflect deliberative processes is not protected." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

Even if a party satisfies these requirements, the deliberative process privilege is qualified. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the governments' interest in non-disclosure." *Id*. Among the factors that the Court must consider are: (1) the relevance of the evidence, (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id*. Thus, if the Court determines that the privilege applies, the Court must consider whether portions of the document are still subject to disclosure. *See Elec. Frontier Found. v. Office of the Dir. of*

*Nat'l. Intelligence*, 639 F.3d 876 (9th Cir. 2010) (citing *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973)).  "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) (citing *United States v. Hirsch*, 803 F.2d 1493, 1496 (9th Cir. 1986)).

### B. Analysis.

The driver's license policy at issue in this case was originally adopted in 2012. The Court issued an order denying a preliminary injunction of the 2012 policy in May of 2013. The policy was subsequently changed, and that change was implemented on September 17, 2013.

To meet their threshold burden in asserting the privilege, Defendants must show that the contested communications are pre-decisional. *Warner*, 742 F.2d at 1161; *Tornay*, 840 F.2d at 1426. Defendants do not attempt to make this showing. They do not attach a copy of their privilege log to their brief, and do not discuss the timing of claimed deliberative documents or the relationship of those documents to the 2012 policy or the 2013 policy change. Plaintiffs provide a copy of Defendants' privilege log with their brief, and it does include dates of documents, but the log says nothing about whether documents claimed to be deliberative relate to the 2012 policy or the 2013 policy change. Although the Court could make assumptions on the basis of the document dates and the dates of the 2012 policy and the 2013 policy change, the Court should not have to proceed on the basis of assumptions. Moreover, the record suggests that the 2013 policy change was considered by Defendants for many months before it was adopted, and the Court cannot safely attempt to guess which allegedly deliberative documents relate solely to that policy change.[1]

---

[1] All of the documents in Defendants' privilege log that assert only the deliberative process privilege pre-date the 2013 policy change. Doc. 210-2. But Defendants have not argued that all of the documents on the privilege log are pre-decisional to the 2013 policy change, and some of the documents from the summer and fall of 2012 appear to be pre-decisional as to the Governor's executive order, such as a series of emails described as "re: DHS Announcement" from August, 2012. Doc. 210-2 at 39.

1    Defendants must also make the threshold showing that the documents are
2 deliberative in nature. *Warner*, 742 F.2d at 1161; *Tornay*, 840 F.2d at 1426. Defendants
3 do not make this showing. In order to be deliberative, the documents must contain
4 opinions, recommendations, or advice about agency policies. *Warner*, 742 F.2d at 1161.
5 In analyzing this threshold requirement in *Warner*, the Ninth Circuit examined the
6 contents of the documents to determine whether such opinions or recommendations
7 existed. Defendants in this case provide no information about the content of the
8 documents other than the privilege log's very short description of a few words and the
9 names of the senders and recipients. The description in many cases is uninformative,
10 such as the series of emails described as "re: DHS Announcement." Doc. 210-2 at 39. A
11 few documents have notes in the "comments" column, but none of those notes discuss the
12 contents of the documents.
13    In sum, Defendants have not carried their burden of showing that the deliberative
14 process privilege applies to the documents listed in the privilege log. Defendants have
15 not addressed whether the documents are pre-decisional, and have made no showing that
16 the documents are deliberative under *Warner*. But this is not the only reason for granting
17 Plaintiff's motion. Even if Defendants had made this threshold showing, the Court would
18 conclude, under the four factors articulated in *Warner*, that the qualified privilege should
19 not be applied in this case. 742 F.2d at 1161.
20    First, the communications at issue in this case are highly relevant. Under the
21 Ninth Circuit's active level of rational basis review for Equal Protection claims, which
22 the Court found applicable in its previous decision, the Court must consider the actual
23 intent behind Arizona's driver's license policy when it considers the merits of this case.
24 Doc. 114 at 24-27, discussing *Dep't. of Agriculture v. Moreno*, 413 U.S. 528 (1973); *City*
25 *of Cleburn v. Cleburn Living Center, Inc.*, 473 U.S. 432 (1985); *Romer v. Evans*, 517
26 U.S. 620 (1996); *Diaz v. Brewe*r, 656 F.3d 1008 (9th Cir. 2011). Under such an analysis,
27 documents concerning the government's intent and purpose in crafting this policy are
28

1 relevant. This factor weighs in favor of disclosure.[2]

2 Second, there may be other evidence available that would negate the need for disclosure of these documents. Plaintiffs argue that the documents Defendants seek to withhold are "the best evidence of improper motive." Doc. 210 at 10. The inquiry, however, is not whether this is the "best" evidence that can be found, and Defendants assert that other evidence as to the motive for the policy is available to Plaintiffs in the form of "the Executive Order, the Policy, publicly made statements, declarations, written discovery responses, and express testimony of several deponents." Doc. 209 at 7. This factor weighs against disclosure.

Third, the government has a central role in the events at issue in this case, and the basis for its action is a central issue in the litigation. In *Warner*, the Court examined whether there was evidence of bad faith or misconduct on the part of the government in concluding that the reports at issue were protected under the privilege. 742 F.2d at 1162. While no allegations of bad faith have been made here, this is not a situation in which the content of government deliberations regarding the policy is secondary to the issues at play, as was the case in *Warner*. The government is a party to this case and its intent in crafting the policy is a primary issue. Moreover, the bad faith inquiry in *Warner* arose from an alleged inconsistency in how the government disclosed or withheld information, and no similar inconsistency has been alleged here. This factor weighs in favor of disclosure.

Fourth, the Court cannot conclude that disclosure would be likely to hinder frank and independent discussion. Arizona has a policy in favor of full and open disclosure, as evidenced by Arizona's open meetings law. *Rigel Corp. v. State*, 225 Ariz. 65, 72-73, 234 P.3d 633, 640-41 (Ariz. Ct. App. 2010) ("Arizona recognizes a legal presumption in favor of disclosing public records."); *see also Cox Ariz. Publ'ns, Inc. v. Collins,* 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993). Arizona courts have not recognized a deliberative

---

[2] The Court does not intend to foreclose Defendants from arguing that a different level of scrutiny should be applied in this case, but the Court's analysis so far has found that active rational basis review is warranted. *See* Doc. 114 at 24-27.

- 5 -

1  process privilege under state law. *See Arizona Indep. Redistricting Comm'n v. Fields*,
2  206 Ariz. 130, 141, 75 P.3d 1088, 1099 (Ariz. Ct. App. 2003); *Star Pub'g Co. v. Pima*
3  *County Attorney's Office,* 181 Ariz. 432, 434, 891 P.2d 899, 901 (App.1994). Arizona
4  state government officials, therefore, should reasonably expect that their deliberations in
5  crafting policy are open to public scrutiny. This factor weighs in favor of disclosure.

6  Thus, even if the contested documents were privileged – which Defendants have
7  not shown – the *Warner* factors would result in disclosure.

**II.     Attorney-client privilege.**

9  For the remaining contested documents on the privilege log, Defendants have
10 asserted the attorney-client privilege. This privilege is sometimes combined in the log
11 with the deliberative process privilege or the work product doctrine, but the Court has
12 already found that the deliberative process privilege does not permit withholding of the
13 documents, and, as noted, Plaintiffs have not challenged assertions of the work product
14 doctrine. Plaintiffs argue that Defendants have impliedly waived the attorney-client
15 privilege by putting the 2013 Policy at issue in this litigation, impermissibly using the
16 privilege as both a sword and a shield. Doc. 210, 12-16.

**A.     Legal Standard.**

18 The attorney-client privilege is absolute. It is not qualified like the deliberative
19 process privilege or the work product doctrine. Thus, if a communication is privileged, it
20 normally cannot be obtained in discovery no matter how relevant it might be to the
21 claims or defenses at issue in the action.

22 The Ninth Circuit has held, however, that the privilege may be waived through a
23 party's litigation actions. *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156 (1992) (citing
24 *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). The test for such waiver
25 is three-pronged. First, a party must assert the privilege as an affirmative act in the
26 litigation. Second, through the affirmative act, the party must put privileged information
27 at issue. Third, the Court must find that allowing the privilege to stand would deny the
28 opposing party access to information vital to its case. *United States v. Amlani*, 169 F.3d

1189, 1195 (1999).

**B.    Analysis.**

Plaintiffs argue that Defendants have placed their attorney-client communications about the 2013 policy change at issue by asserting that the 2013 policy change cures the constitutional violations of the 2012 policy.  Doc. 210 at 14.  Plaintiffs cite Defendants' Motion to Supplement the Record on Appeal before the Ninth Circuit, where Defendants argue that the 2013 policy change passes constitutional muster and moots Plaintiffs' Equal Protection claim because the new policy denies drivers' licenses to *all* deferred action recipients, not just DACA recipients.  *See* Reply in Support of Mot. To Supp. the Record on Appeal, No. 13-16248 (9th Cir.).  Defendants respond that they do not contend that their decision to change the policy was at the direction of legal counsel, nor that the decision is constitutional because they sought or received legal advice.  Doc. 209 at 11.

It is well-established that a holder of the privilege cannot claim that legal advice from his or her attorney justifies his or her action while simultaneously shielding that advice from disclosure.  *Chevron*, 974 F.2d at 1156; *Amlani*, 169 F.3d at 1195; *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *Sedco Int'l S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.1982).  But if the privilege holder makes no claim that he or she relied on counsel's advice, the question of how privileged information is placed at issue – the second prong of the waiver test – is more difficult.

The most analogous case in this circuit appears to be *Amlani*, in which the defendant argued on appeal that the prosecutor's disparaging comments about his lawyer caused him to fire his lawyer and settle for less effective counsel.  169 F.3d 1189.  The government sought discovery of the defendant's conversations with his lawyer to determine whether the alleged disparagement had in fact caused him to change counsel, and the defendant asserted the attorney-client privilege in response.  The Ninth Circuit held that the defendant's claim – that his lawyer was fired only because of statements made by the prosecutor – sufficiently interjected his communications with the lawyer into the case to constitute waiver of the privilege.  *Id.* at 1195.

- 7 -

1    Courts outside the Ninth Circuit have taken a variety approaches to this issue. At
2 one end of the spectrum, the Eastern District of Washington in *Hearn v. Rhay*, 68 F.R.D.
3 574 (1975), took a broad view of waiver. In *Hearn*, prison officials in a civil rights case
4 asserted the defense of qualified immunity. *Id*. at 574. The defendants never claimed
5 advice of counsel as a defense to their actions, but the district court noted that for
6 qualified immunity to apply, the defendants must have acted in good faith. *Id*. The
7 plaintiff sought disclosure of the legal advice rendered to the defendants by the state's
8 attorney "insofar as such advice related to plaintiff's confinement and tends to prove
9 defendants' bad faith." *Id*. at 578. The district court held that the defendants' assertion
10 of the immunity defense was an affirmative act and, because "the legal advice they
11 received is germane to the qualified immunity defense they raised," that the first two
12 prongs of the waiver test were met. *Id*. at 581. The district court justified its holding by
13 noting that "the content of defendants' communications with their attorney is inextricably
14 merged with the elements of plaintiff's case and defendants' affirmative defense. These
15 communications are not incidental to the case; they inhere in the controversy itself, and to
16 deny access to them would preclude the court from a fair and just determination of the
17 issues." *Id*. at 582.

18    Other courts disagree with the broad scope of waiver articulated in *Hearn*. *See,*
19 *e.g.*, *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). The Third Circuit, for
20 example, reviewed the holding in *Hearn* and similar cases and characterized them as
21 extending "waiver of the privilege to cases in which the client's state of mind may be in
22 issue in the litigation," rather than limiting waiver to situations where a party
23 affirmatively asserts that advice of counsel justified his or her actions. *Rhone-Poulenc*
24 *Rorer Inc. v. Home Indem. Co*., 32 F.3d 851, 864 (3d Cir. 1994). The Third Circuit noted
25 that cases such as *Hearn* "rest on a conclusion that the information sought is relevant and
26 should in fairness be disclosed." *Id*. But "[r]elevance is not the standard for determining
27 whether or not evidence should be protected from disclosure as privileged." *Id*.; *see also*
28 *Erie*, 546 F.3d at 229. The Third Circuit held that even if a privilege holder's state of

mind is at issue, the privilege still applies.  Other courts have also held that "a party must *rely* on privileged advice from his counsel" in order to waive the privilege, rather than merely make the evidence relevant.  *Erie*, 546 F.3d at 229 (emphasis in original).

The Court concludes that the reasoning in *Rhone-Poulenc* and *Erie* is truer to the intent and nature of the attorney-client privilege than *Hearn*.  Defendants do not claim that the 2013 policy change is constitutional because counsel so advised them.  Doc. 209 at 11.  Defendants instead argue that "[t]hrough this litigation" they learned that all deferred action recipients are without the right, under Arizona law, to drivers' licenses, and that the policy change reflecting this moots any basis for an Equal Protection claim.  Reply in Support of Mot. To Supp. the Record on Appeal, No. 13-16248 (9th Cir.).

Plaintiffs' brief is telling on this distinction.  Plaintiffs argue that "[b]y asserting that the 2013 Policy cures the constitutional violations of the 2012 Policy, Defendants are using the 2013 Policy as a sword and have placed the 2013 policy revision 'at issue.'"  Doc. 210 at 14.  Plaintiffs do not assert, however, that Defendants have used *the advice of legal counsel* as a sword.  Plaintiffs in essence ask the Court to grant them access to privileged communications because those communications are highly relevant and will allow Plaintiffs to test Defendants' assertions concerning the real reasons for the 2013 policy change.  As already noted, however, relevancy – even high relevancy – does not waive the attorney-client privilege.  *Erie,* 546 F.3d at 229.  Most attorney-client communications related to a case would be highly relevant to that case, but the privilege applies even when attorney-client communications are "vital, highly probative, directly relevant or even go to the heart of [the] issue."  *Rhone-Poulenc*, 32 F.3d at 864.  Waiver requires more than the mere fact that legal counsel were consulted before a defendant acted.

Nor is the Court persuaded that the privilege has been waived in this case on the basis of the Ninth Circuit's decision in *Amlani*.  The circumstances in *Amlani* were unique, with a defendant seeking to overturn his criminal conviction by asserting that the prosecutor interfered with his attorney-client relationship and persuaded him to terminate

- 9 -

his counsel. More was at work than the relevancy of the defendant's communications with his attorney. The very nature of the attorney-client relationship, and why it was terminated, were injected into the case by the defendant's claim. No similar claim regarding their relationship with counsel has been made by Defendants in this case. Rather, Plaintiffs seek the privileged communications to test the credibility of Defendants' explanation for why they changed the 2012 policy. The fact that the communications might help Plaintiffs in making their argument, however, provides no basis for finding waiver.

A corollary point is nonetheless important. During his deposition, ADOT Director John Halikowski testified that he made the decision to implement the 2013 policy change. Although neither side has provided a complete copy of his deposition transcript, the portion provided by Defendants shows that the attorney-client privilege was invoked. Halikowski testified to the reasons for the 2013 policy change, but invoked the privilege rather than describing the legal advice he received from counsel in connection with the change. Doc. 209-1 at 59-64. Having thus invoked the privilege, Defendants will not be permitted at later stages of this litigation to describe that advice or to explain the reasons for the 2013 policy change by revealing information that was withheld on the basis of the attorney-client privilege. Defendants cannot selectively disclose privileged communications for their own benefit. Nor will Defendants be permitted to argue that the 2013 policy change satisfies the Constitution because it was made on advice of counsel.

**IT IS ORDERED:**

1. Defendants shall disclose the documents withheld in their privilege log solely on the basis of the deliberative process privilege. These documents shall be disclosed within 14 days of this order. Defendants need not disclose the remaining documents in the privilege log.

2. The parties promptly shall confer concerning any additional deposition discovery that is warranted by this ruling, and shall place a conference call to the Court to

1  discuss a brief modification of the discovery schedule.

2  Dated this 15th day of January, 2014.

*[signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge