# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice in the State of California. I make this declaration in support of Plaintiffs' request for an award of attorneys' fees. The declaration is based on facts of which I have personal knowledge. If I were called to testify as a witness to these facts, I could and would do so competently.

2. I was admitted to the California Bar in December 1978, following my graduation from law school in May of 1978. For 20 years, I was employed by the ACLU Foundation of Southern California, including approximately 12 years as its First Amendment attorney. For the last seven years prior to my departure from the ACLU, I served as a Senior Staff Counsel. I left the ACLU to begin a private civil rights practice in late April, 1997. Attached at Exhibit "1" is my current resumé.

3. My billing rate for 2018 is $990 an hour. I settled fees in several cases last year, applying my 2017 rate of $975 an hour to calculate the lodestar, including the fees in *Schuler v. County of Orange*, 8:17-cv-00259 DOC KES (C.D. Cal. 2017). I did not file a motion for fees in 2016. In 2014 and 2015, several courts approved my rate of $875 an hour. In *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), the Circuit granted the motion for fees, approved entitlement, and referred the matter to the Appellate Commissioner to determine the final award. The parties then settled the trial and appellate fees together with approximately a five percent reduction of the appellate lodestar. The Circuit panel approved the full award at $875 an hour. See *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

4. In 2012, I was paid my then full rate of $795 an hour by an insurance carrier in a non-contingency case before the Hon. Dean Pregerson of the Central District of California. *Federal Deposit Insurance Company v. Larry B Faigin,* 2:12-cv-03448-DDP-CW (C.D. Cal. 2012). In 2010, I was awarded fees at $725 an hour in *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009), a First Amendment case. In 2009, I was awarded fees by the Central District

of California at $710 an hour in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (C.D. Cal. 2009), and in *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM (C.D. Cal. 2009), both police misconduct cases. In 2008, I was awarded fees at $695 an hour in *Jones v. City of Los Angeles*, cv-03-1142 R. *See* 444 F.3d 1118 (2006), vacated per settlement 505 F.3d 1006 (9th Cir. 2007). The fee award was affirmed on appeal. 2014 U.S. App. LEXIS 1952 (9th Cir. Jan. 31, 2014).

5. My practice involves complex civil rights litigation, focusing now primarily in the areas of the rights of homeless persons, First Amendment rights and police practices. I have received awards for my legal work. In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine and was also named in the Top 75 Women Litigators in California by the Daily Journal Corporation. In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work. I also was named in 2007 by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013 and again in 2017, I was named one of the top women lawyers in Los Angeles. I have been named as a Superlawyer in the area of First Amendment and civil rights litigation for more than a decade.

6. I have been qualified twice as an expert to testify at trial on issues concerning non-profit legal practice: once before the State Bar and once in Los Angeles Superior Court. Recently, California's Second Appellate District noted my qualification as an expert to opine on reasonable market rates for attorney fees. *See Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished) (approving expert basis for opinion). My declarations and the supporting evidence of reasonable market rates have been repeatedly cited favorably by federal and state courts in awarding fees. For example, in *Nadarajah v. Holder,* 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the ACLU's motion for fees under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA

2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), the Central District of California awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. Id. at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Ca. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Dugan v. County of Los Angeles*, cv-11-08145 CAS (C.D. Cal. March 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014). The most recent decision approving rates based, in part, on my declaration is *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018), Doc. 180, p.5.

7. In addition, I have litigated statutory fee issues at the appellate level in several cases. I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), affirming the continued vitality of the “catalyst” fee doctrine in California law. I was also lead counsel in *Jones v. City of Los Angeles*, 555 Fed.Appx. 659 (2014), approving entitlement to fees as a “prevailing party” based on the Ninth Circuit’s necessary approval of a settlement that was conditioned on vacatur of the panel decision.

8. I have been asked to submit this declaration to attest to the reasonableness of the fee rates requested by the counsel in this case. I am not being compensated for my time in this matter.

9. In addition to my personal knowledge of most of the attorneys for whom fees are sought by this motion, I have considerable experience to support

my assessment of the rates for comparably skilled attorneys. In my 40 years of involvement in the civil rights community in Los Angeles, I have co-counseled with, supervised, or taught thousands of lawyers and law students, many of whom now practice civil rights law in Los Angeles.  For many years, I supervised the summer law clerk program at the ACLU. I co-teach the civil rights litigation practicum at Loyola Law School for approximately 10 years.  In addition, I coordinated several large pro bono legal projects in Southern California with well more than one thousand lawyers and law students. These include representation in Bureau of Prisons administrative hearings for nearly 900 Mariel Cubans moved to federal detention facilities in California in the late 1980s after an uprising at the Atlanta Penitentiary destroyed the facility.

10. I also coordinated pro bono lawyers to represent approximately 5,000 high-school students prosecuted in juvenile court for truancy and other offenses after simultaneous school walk-outs to protest a then-pending restrictive immigration bill in Congress.  Currently, my office coordinates two pro bono clinics for homeless individuals cited for "quality of life" offenses in Los Angeles. Finally, over the past decade I coordinated pro bono criminal defense for protestors in mass arrests in Los Angeles, including during the Occupy movement. This gives me a broad base of experience from which to assess the relative skills and experience of practitioners in civil rights litigation in the Central District.

11. To prepare my declaration, I communicated with several of the attorneys involved in this litigation, including Linton Joaquin and Nicholas Espiritu at NILC and Julia Gomez at MALDEF. I am familiar with the qualifications, skills, experience and reputation of several of the attorneys for whom fees are sought in this motion.  David Cole, now the national litigation director of the ACLU, and I have co-counseled multiple cases over the past 30 years.  Linton Joaquin, Shui-Ming Cheer, Nicholas Espiritu, Karen Tumlin and Nora Preciado at NILC are all attorneys with whom I have engaged professionally

in Los Angeles. Several of the NILC attorneys were previously at other non-profits in Los Angeles, including MALDEF and the ACLU of Southern California, where I first met them. Ms. Tumlin and I met approximately 13 years ago, when she first came to NILC. Based on my involvement with the civil rights legal community in Los Angeles, I am of the opinion that each enjoys a reputation as a skilled and experienced attorney.

12. I am informed that the following rates are being sought in this case:

**ACLU OF ARIZONA**

| Personnel | Role | Graduation | Rate |
|---|---|---|---|
| Kathleen Brody | Attorney | 2007 | $350 |
| Kelly Flood | Attorney | 1999 | $400 |
| James Lyall | Attorney | 2007 | $350 |
| Gloria Torres | Paralegal | n/a | $185 |

**ACLU (IRP)**

| Personnel | Role | Graduation | Rate |
|---|---|---|---|
| Jennifer Chang Newell | Attorney | 2003 | $630 |
| Christine Sun | Attorney | 1998 | $705 |
| Katrina Eiland | Attorney | 2010 | $445 |
| Cecillia Wan | Attorney | 1995 | $775 |
| Michael Tan | Attorney | 2008 | $480 |
| Araceli Martinez-Olguin | Attorney | 2004 | $600 |
| David Cole | Attorney | 1984 | $850 |
| Orion Danjuma | Attorney | 2010 | $445 |

**MALDEF**

| Personnel | Role | Graduation | Rate |
|---|---|---|---|
| Victor Viramontes | Attorney | 1999 | $700 |
| Jorge Castillo | Attorney | 2010 | $445 |
| Julia Gomez | Attorney | 2013 | $360 |
| Andres Holguin-Flores | Attorney | 2015 | $330 |
| Adriana Garcia | Legal Fellow | 2013 | $185 |

**NILC**

| | | | |
|---|---|---|---|
| Tanya Broder | Attorney | 1988 | $800 |
| Shiu-Ming Cheer | Attorney | 2000 | $675 |
| Nicholas Espiritu | Attorney | 2004 | $600 |
| Linton Joaquin | Attorney | 1976 | $850 |
| Nora Preciado | Attorney | 2005 | $570 |
| Karen Tumlin | Attorney | 2004 | $600 |
| Bianca Alcala-Ruiz | paralegal | n/a | $195 |
| Sheila Miller | sr. paralegal | n/a | $215 |
| Ignacia Rodriguez | Legal Fellow | 2013 | $185 |

13. It is my opinion that the rates sought are reasonable. With few exceptions, most of the rates sought are in the mid to low end of rates for comparable attorneys in the Los Angeles legal market. I understand that the attorneys at the ACLU IRP, MALDEF and NILC are seeking market rates in the Central District of California based on their specialized knowledge and skill otherwise unavailable in the local Arizona legal market. Although the ACLU IRP personnel are located in San Francisco and Mr. Cole is in New York, I have used Los Angeles market rates for everyone other than the attorneys at the ACLU of Arizona. In my experience reviewing fee awards and supporting declarations, there is little, if any, difference between the rates in these metropolitan areas.

14. I have extensive experience with the methodology applied to set appropriate market rates for public interest and civil rights attorneys who do not have paying clients. During the time that I was at the ACLU of Southern California, I prepared numerous fee motions under federal and state fee-shifting statutes for cases in which the ACLU represented the prevailing party. I was responsible for preparing these motions in cases in which I was directly involved in the underlying litigation, as well as in cases brought by other staff attorneys and volunteer counsel for the ACLU.

15. In this role, I obtained information on market rates through a variety of sources that I continue to use to evaluate reasonable rates each year. I review current billing rates and fees sought by, and awarded to, attorneys at large, commercial law firms to establish rates for individuals of comparable experience at public interest and civil rights firms. The attorneys at large commercial firms handle similarly complex federal litigation and, in many instances, they are also familiar with the experience levels of various non-profit attorneys because they co-counsel cases with the public interest bar.

16. I often use rates at large firms to establish comparative market rates for civil rights lawyers based on my understanding that billing rates by lawyers at civil rights firms and public interest organizations at rates even marginally comparable to those of attorneys who do other types of complex litigation is consistent with the instruction of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"). *See also, Nadarajah v Holder,* 569 F3d at 910.

17. To analyze reasonable market rates, I apply several additional principles. First, when available, I look to rates awarded to the same attorneys in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).

18. Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach, approved in *Blum*, *supra*, recognizes that most

civil rights attorneys take cases on contingency and are not paid hourly for their services. Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

19. I estimate that I review more than 100 fee motions, fee awards, and supporting declarations in the course of a year. My practice is to obtain this information from court orders in the past year awarding statutory fees or awarding fees as a discovery sanction. In addition, I subscribe to several websites that report legal news. If I read about a case where there is likely to have been a fee motion, I review the relevant court docket and obtain a copy of any fee motion, supporting declarations and fee award from public sources, including documents on PACER and state court websites.

20. My opinion concerning the reasonableness of the rates sought in this instance is based on the fee awards described below and attached to my declaration, as well as the other documents submitted with my declaration. I have also provided the current schedule for the Adjusted Laffey Matrix. Although courts in the Ninth Circuit generally do not favor use of the Laffey Matrix because it does not assess individual years of experience and assigns all attorneys practicing 20 years or more the same rate, it can be a useful tool to measure the reasonableness of the rates requested where, as here, those rates generally fall below the Adjusted Laffey Matrix categories.

21. Attached at Exhibit 2 is a 2017 award of fees in the Central District of California in *Flores v. Sessions*, CV 85-4544-DMG (AGRx) (CD Cal. 2017) [Doc 383]. In *Flores*, Judge Gee approved enhanced EAJA rates for three attorneys: Peter Schey, Carlos Holguin and Alice Bussiere, 1973, 1979 and 1984 law graduates, respectively. I am very familiar with Mssrs. Schey and Holguin. I have known Peter Schey professionally since approximately 1978, when I

graduated law school. Mr. Holguin and I went to law school together, although he was a semester behind me. I know Alice Bussiere by reputation. *See* ¶4. Ms. Bussiere's rate of $800 an hour is below the 2015 rate approved in *Franco* for Judy Rabinovitz, a 1985 law graduate at the ACLU IRP. Ex. 5, ¶7. I would anticipate that Ms. Rabinovitz's current rate would be approximately $900 an hour, applying a modest 3 percent annual increase, which is about the rate of inflation for the legal component in the cost-of-living calculation.

22. Attached at Exhibit 3 is the Court's order in *Puente Arizona v. Penzone*, Case No. 2:14-cv-01356 DGC (D. AZ Oct. 25, 2017), awarding fees to attorneys at the ACLU of Arizona and California Central District at Hadsell, Stormer & Renick, the National Day Labor Organizing Committee (NDLON) and the University of California, Irvine Immigrant Rights Clinic. I provided a supporting declaration in the case on behalf of the California attorneys.

23. Attached at Exhibit 4 is a true and correct copy of the Order approving EAJA fees for the ACLU of Southern California and other attorneys in *Franco-Gonzalez v. Holder*, 10-cv-02211 DMG (C.D. Cal. Oct. 8, 2015), Doc. 866. I provided a declaration in support of the ACLU's fee motion in the case. The rates for each attorney are set out in my declaration, a true and correct copy of which is attached at Exhibit 5. The fees were settled with a discount of slightly more than 10 percent of the hours on a total demand of approximately $11 million. Nonetheless, because the case was a class action, the Court was required to consider the reasonableness of the lodestar and the fees awarded.

24. In *Franco-Gonzalez*, the 2015 rate of $760 an hour was used for Judy London at Public Counsel. Ex. 5, p. 3. I know Ms. London personally and am aware that she is a 1990 law graduate. In 2015, she had 25 years of experience, just two years more than Cecillia Wang has now. Ms. Wang seeks a rate of $775 an hour. Both are highly skilled lawyers engaged in complex federal litigation.

25. Matt Adams was one of the attorneys awarded fees in *Franco-*

*Gonzalez*. His 2015 rate was $710 an hour. Ex. 5, p.4. Based on the information I obtained from the attorneys in *Franco-Gonzalez*, it is my understanding that Mr. Adams is a 1998 law graduate. His 2015 rate of $710 an hour is slightly higher than the rate of $705 an hour sought three years later for Christine Tan of ACLU (IRP), also a 1998 law graduate.

26. In *Franco,* the 2015 rate for Ahilan Arulanantham of the ACLU of Southern California was $690 an hour. Based on my personal knowledge of both attorneys, I am aware that Victor Viramontes and Ahilan Arulanantham are law school classmates and both are 1999 graduates. Mr. Viramontes requested rate of $700 an hour is only $10 an hour above the 2015 rate applied by Mr. Arulanantham.

27. Attached at Exhibit 8 is a true and correct copy of the order in *Flores v. City of Westminster*, 8:11-cv-00278-DOC-RNB (C.D. Cal. Oct. 23, 2015) [Doc. 284]. In *Flores* Victor Viramontes was awarded fees at the 2014 rate of $625 an hour. The $75 an hour difference between his 2014 approved rate and the 2018 rate he requests is an increase of approximately 2.5 percent a year.

28. In addition, in *Franco-Gonzalez,* Victoria Lopez, an attorney with the ACLU of Arizona, applied the 2015 rate of $640 an hour. Ex. 5, p.4. Ms. Lopez is a 2001 law graduate. In 2015, she had 14 years experience. In the motion now before the Court, Plaintiffs request a rate of $630 an hour for Jennifer Chang Newell, a 2003 law graduate now with 15 years of experience, and $600 an hour for Karen Tumlin, Nicholas Espiritu and Araceli Martinez-Olguin, all 2004 law graduates with 14 years of experience.

29. Plaintiffs also request $570 an hour for Nora Preciado, a 2005 law graduate with 13 years of experience. With just one year less experience, Ms. Preciado's requested rate is $70 an hour below the 2015 rate of $640 an hour for Ms. Lopez in *Franco* and only $35 above the 2015 rate of $535 in *Franco* for a 2006 and 2007 law graduate. Ex. 5, p.4. In *Franco*, the private firm applied its

customary billing rate of $865 an hour for 2007 law graduates, approximately 60 percent above the rates for the public interest attorneys. Ex. 5, p.4.

30. The rates of $480 and $445 an hour now sought for Michael Tan, a 2008 law graduate, and for Katrina Eiland, Orion Danjuma, and Jorge Castillo, all 2010 law graduates, are very low as compared to the rate of $535 an hour for Talia Inlender and Sean Riordan, attorneys with eight years experience three years ago in *Franco*. Ex. 5, p. 4. These rates are also well below the rate of $500 the Court approved last year in *Puente Arizona* for attorneys in the Central District of California with eight years of experience. Ex. 3. In *Puente*, the Court also approved the rate of $565 an hour for attorney Annie Lai, a 2009 law graduate who was lead counsel in the case. Ex. 3, p.4.

31. I filed a supporting declaration in *Puente Arizona* on the range of reasonable rates in the Central District of California. Doc. 708-11. I understand that the Court capped out-of-area market rates at $750, stating that the higher rate requested by Dan Stormer in *Puente* represented a premium rate in a large market for counsel who did not have a major role in the case. In this motion, only four attorneys seek a rate above the Court's $750 an hour cap for out-of-area counsel in *Puente.* Based on my review of the fee declaration of Julia Gomez and my review of other materials provided to me with a summary of each counsels' hours, in this instance attorneys Linton Joaquin and Tanya Broder, both of NILC, were among the attorneys with the most hours in this case. Mr. Joaquin has only one year less experience than Mr. Stormer had in 2017, but he seeks a 2018 rate nearly 30 percent below the rate sought by Mr. Stormer last year and only $100 above the cap the Court set last year. In my view, Linton Joaquin's rate is low. Is is less than I was awarded three years ago, with five years less experience than he has now. I know Linton Joaquin well and am of the opinion that he enjoys a reputation as one of the most highly skilled civil rights lawyers in Los Angeles, if not the country. As another point of comparison, his requested rate is $25 an

hour below the 2015 rate in *Franco* for James Preis, another well-known civil rights lawyer in Los Angeles. Ex. 5, p.3. Mr. Preis is a 1978 law graduate. *Id.*

32. Tanya Broder, also of NILC, seeks a rate just $50 above the cap the Court set in *Puente* for out-of-area attorneys. I know Ms. Broder by reputation. Her requested rate of $800 an hour is well in line with awards to comparably skilled attorneys practicing the same length of time in the Los Angeles legal market. Ms. Broder is a 1988 law graduate. She has the same amount of experience now as Judy Rabinovitz had in 2015, when she applied the rate of $825 an hour. Ex. 5, p.3. She has three more years of experience than Bernard Alexander, a 1987 law graduate, had in 2014, when he was awarded fees at $750 an hour. Ex. 9, pp. 12-13. Ms. Broder's requested rate is below the $850 an hour rate approved for Lisa Jaskol, also a 1988 law graduate, and Anne Richardson, a 1989 law graduate, in the *Nozzi* case. Ex. 6, p. 20.

33. The other two lawyers whose requested rates are above $750 an hour are Cecillia Wang and David Cole, both with the national ACLU. As I stated previously, I know Mr. Cole well and have co-counseled cases with him for three decades. Among my colleagues in the civil rights community, he is widely regarded as an exceptionally skilled attorney. He brings invaluable insight to litigation strategy. Mr. Cole, a 1984 law graduate with 34 years of experience, seeks a rate of $850 an hour. This is only $25 above the 2015 rate for Judy Rabinovitz, a 1985 law graduate in Franco. Ex. 5, p.3. It is the same as the rate for the 1988 and 1989 law graduates in *Nozzi*. *See* ¶29.

34. Cecillia Wang is also an exceptionally skilled attorney engaged in complex immigration litigation. Although I have not worked with her directly, I have had occasion to discuss her qualifications and skill with colleagues at the ACLU of Southern California in the course of preparing supporting fee declarations for them in several recent cases. Ms. Wang requests a rate of $775 an hour, only $25 above the rate the Court set as the cap last year. This rate is

supported by the $750 an hour rate for Hernan Vera in 2017 in *Nozzi*. Ex. 6, p. 20. He had the same amount of experience in 2017 as Ms. Wang has now.

35. Attached at Exhibit 6 is the fee award in *Nozzi v. Housing Authority of the City of Los Angeles*, Case No. 07-cv-00380-PA-FFM (C.D. Cal. Feb. 2, 2018), Doc. 331. Because the Court does not discuss the individual rates sought in approving the request in full on a lodestar cross-check, attached at Exhibit 7 is the underlying fees motion of counsel filed in 2017, setting out the individual rates and experience of each attorney. I know each of the attorneys for whom fees were sought in *Nozzi*. Mssrs. Litt, Estaur and Ms. Brown and I have co-counseled several class-action cases in the past. Mr. Litt and I are currently co-counsel on a class-action civil rights case pending in the Central District of California.

36. In *Nozzi*, the Court found that the lodestar crosscheck supported the requested fee award. This included the reasonableness of Mr. Litt's requested rate of $1150. Mr. Litt had six more years of experience than Linton Joaquin has now as he seeks a rate $300 below the rate approved for Mr. Litt in *Nozzi*.

37. In *Nozzi,* the 2017 rate approved for 2006 lStacy Brown, a 2006 law graduate, was $600 an hour. Ex. 6, p.19. That is the same as the 2018 rate sought for in this motion for Araceli Martinez-Olguin, Karen Tumlin and Nicholas Espiritu, 2004 law graduates with three additional years of experience, and above the rate of $570 an hour requested by Nora Preciado, a 2005 law graduate with two additional years of experience. The rate for Stephanie Carroll, a 2004 law graduate, in *Nozzi* is $640 an hour. Ex. 6, p.20.

38. In *Puente*, Caitlin McLoon, a 2012 law graduate, applied a rate of $425 an hour. In the instance motion, attorneys Katrina Eiland (ACLU IRP), Orion Danjuma (ACLU IRP) and Jorge Castillo (MALDEF), all 2010 law graduates, have eight years of experience, three years more than Caitlin McLoon had in 2017. They request a rate of $445 an hour, which represents a 1.5 percent annual increase over the Ms. McLoon's rate. In the same vein, the rate sought for

Julia Gomez of MALDEF is very low when compared to the rate approved by the Court in *Puente* for Ms. McLoon. With the same amount of experience in 2018 as Ms. McLoon had in 2017, Ms. Gomez seeks a rate of $360 an hour, slightly less than 20 percent below the rate approved for Ms. McLoon.

39. Plaintiffs also seek $185 an hour for two law graduates who worked on the case during the time that they were fellows at NILC and MALDEF. In Exhibit 8, Judge Carter approved fees for one of the fellows, Adriana Garcia at $250 an hour. Ex. 8, pp. 12-13.

40. The rate sought for paralegals ranges from $185 to $215 an hour. This is a reasonable rate for a paralegal in the Central District of California. In *Flores*, the Court approved the 2014 rate of $175 an hour for Gustav Ham. Ex. 8, p. 20. In *Puente*, Plaintiffs sought $175 to $200 an hour for paralegals at Hadsell, Stormer and UCI Law, which the Court accepted. Ex. 3.

41. The chart below summarizes the rates set forth in the exhibits discussed above. It identifies the attorney, the year of the award, the amount of experience the attorney had at the time of the award, and the rate approved.

| Ex.# | Attorney | Award | Years | Rate |
|---|---|---|---|---|
| 2 | Peter Schey | 2017 | 44 | $875 |
| 2 | Carlos Holguin | 2017 | 38 | $750 |
| 2 | Alice Bussiere | 2017 | 27 | $800 |
| 3 | Cindy Pánuco | 2017 | 8 | $500 |
| 3 | Annie Lai | 2017 | 8 | $565 |
| 3 | Caitlin McLoon | 2017 | 5 | $425 |
| 4 | James Preis | 2015 | 37 | $875 |
| 4 | Judy Rabinovitz | 2015 | 30 | $825 |
| 4 | Matt Adams | 2015 | 17 | $710 |
| 4 | Ahilan Arulanantham | 2015 | 16 | $690 |
| 4 | Victoria Lopez | 2015 | 14 | $640 |
| 4 | James Lyall | 2015 | 8 | $535 |

| | | | | |
|---|---|---|---|---|
| 4 | Sarah Mehta | 2015 | 6 | $490 |
| 4 | Esha Bhandari | 2015 | 5 | $475 |
| 4 | Stephen Kang | 2015 | 4 | $450 |
| 4 | Sofia Corona | 2015 | 1 | $340 |
| 6 | Barrett S. Litt | 2017 | 48 | $1150 |
| 6 | Paul Estuar | 2017 | 24 | $765 |
| 6 | Patrick Dunlevy | 2017 | 25 | $750 |
| 6 | Stacy Brown | 2017 | 11 | $600 |
| 8 | Victor Viramontes | 2014 | 15 | $625 |
| 8 | Bernard Alexander | 2014 | 27 | $750 |
| 8 | Matthew Barragan | 2014 | 4 | $340 |
| 8 | Tracy Fehr | 2014 | 11 | $475 |
| 8 | Ariana Garcia | 2014 | law grad | $250 |
| 8 | Gustav Ham | 2014 | paralegal | $175 |

42. Based on the foregoing and the attached exhibits, it is my opinion that the rates sought by this motion are reasonable rates of compensation.

I declare that the foregoing is true and correct. Executed this 13th day of July, 2018, at Los Angeles, California.

Carol A. Sobel

CAROL A. SOBEL