FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Sean T. Hood (No. 022789)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: dnorthup@fclaw.com
Email: shood@fclaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Dream Act Coalition, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Janice K. Brewer, et al.<br><br>Defendants. | No. CV-12-02546-PHX-DGC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES** |

Counsel's request for $3.4 million in fees and expenses defies common sense. Counsel overstaffed this litigation and now seek to recover nearly 6,000 hours of time for 26 timekeepers (21 attorneys) at four firms at overstated, out-of-forum rates. The Motion utterly fails to satisfy counsel's burden to prove reasonableness of the request. Counsel seek fees for time and costs that are not recoverable. After eliminating the clearly unrecoverable items, it is difficult to determine what amount might be reasonable because counsel significantly overstaffed the case and have failed to provide sufficient support for the items requested. Many time entries are so vague that one cannot determine what the timekeeper did. Counsel's overstaffing is apparent from the time entries, as are their failures to sufficiently detail their time. Further, counsel erroneously multiply their overstated total hours by current 2018 rates purportedly prevailing in other forums, which entirely ignores the fact that work occurred from 2012 to 2018 when lower rates would have prevailed and that counsel cannot be compensated at out-of-forum rates here.

Plaintiffs, in fact, had highly competent *local* counsel. Counsel cannot meet their burden of showing that local counsel was unavailable and unwilling to take the case as required to receive out-of-forum rates. Any award of fees should utilize a reasonable lodestar based on forum hourly rates and a reasonably reduced amount of time, and then that lodestar should be further adjusted downward.

## I. THE COURT SHOULD DENY THE REQUESTED FEES.

### A. Counsel's fees on appeal are not recoverable.

Counsel claim fees of $3,271,804.25. Doc. 336; Ex. 1. Their request includes 818.0 hours for work on the appeal in the Ninth Circuit and U.S. Supreme Court from February 18, 2015 to March 19, 2018. Northup Decl. ¶ 5 & Ex. 2; *see also* Doc. 336 at 15:16–20. Counsel cannot obtain fees incurred for work on the Ninth Circuit appeal and briefing in the U.S. Supreme Court that occurred after this Court entered final judgment in 2015. Counsel made no application to the Ninth Circuit for fees and expenses in accord with Ninth Circuit Rule 39-1.6. Nor did they move the Ninth Circuit to transfer consideration of appellate fees to this Court under Ninth Circuit Rule 39-1.8. Consequently, this Court is "not authorized to rule on the request for appellate attorney's fees." *Cummings v. Connell*, 402 F.3d 936, 940, 947–48 (9th Cir. 2005), amended, 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005).

### B. Counsel's fee request is unreasonable.

A reasonable fee is one sufficient to induce an attorney to undertake the representation while avoiding a windfall to counsel. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158–60 (9th Cir. 2018). The Court must ensure that the requested fees are reasonable and cannot "simply [take] at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Id*. Neither the hourly rates nor amount of hours requested are reasonable here.

#### 1. Counsel's requested hourly rates are unreasonable.

Apart from fees for ACLU-AZ, counsel's request is not based on rates prevailing in this forum as required. MALDEF, ACLU-IRP, and NILC request out-of-state rates.

**a. Out-of-forum rates are inappropriate here.**

Reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the forum district in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The requesting party bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* at 980.

There is a very limited exception to this forum rule where local counsel is either unwilling or unable to take the case, but only where supported by specific evidence. *Id.* at 979; *Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *see also Lopez-Valenzuela v. Maricopa Cty.*, No. CV-08-00660-PHX-SRB, 2015 WL 12811366, at *3 (holding that ACLU-IRP and MALDEF failed to carry their burden of showing the unavailability of local counsel). This limited exception does not apply here for several reasons.

First, where, like here, the requesting party engages both local and out-of-forum counsel, out-of-forum rates are not warranted. *See Reyes v. Bakery & Confectionary Union & Indus. Intern. Pension Fund*, 281 F. Supp. 3d 833, 852–53 (N.D. Cal. 2017); *Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1106 (W.D. Wash. 2012). Local counsel ACLU-AZ represented Plaintiffs throughout the litigation and, when the lawsuit was filed, local counsel Polsinelli Shughart PC also represented Plaintiffs.

Polsinelli withdrew because it felt that there were simply too many lawyers already handling Plaintiffs' representation. Doc. 129 ("Polsinelli makes this motion because **Plaintiffs can be more efficiently represented by a smaller team of attorneys**.") (emphasis added); Northup Decl. ¶ 3 (Polsinelli expressed frustration with the number of counsel on Plaintiffs' side of the case, that there was no clear decision maker and that, even though Polsinelli was acting as lead counsel, there was no real ability to direct the case; defense counsel understood Polsinelli's withdrawal occurred because of the way the case had been staffed and managed, not because Polsinelli was unwilling or incapable of

handling the representation). That ACLU-AZ allegedly could not have represented Plaintiffs alone or that Polsinelli withdrew does not establish the requisite unavailability. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995) (showing "difficulty in retaining a lawyer" or that "local counsel were unwilling to accept this case 'alone'" is insufficient).

Counsel's claim that local counsel was unavailable is unsupported and speculative. They only cite one sentence from Mr. Pochoda's declaration, where he summarily declares, "[A]s has been my experience with other complex impact and constitutional litigation matters, there were not sufficient lawyers or law firms in Arizona with the necessary expertise, capacity, and willingness to take on a case of this magnitude and complexity." Doc. 336-25, ¶ 6. This single sentence does not establish the unavailability of local counsel. Mr. Pochoda does not identify any search or sampling criteria used for such a conclusory statement. *See Bywaters v. United States*, 670 F.3d 1221, 1234 (Fed. Cir. 2012) (denying out-of-forum rates because no indication that a reasonable search for local counsel was conducted); *Beattie v. Line Mountain Sch. Dist.*, 4:13-CV-02655, 2014 WL 3400975, at *8 (M.D. Pa. July 10, 2014) (contacting a single attorney is "neither a sufficiently exhaustive search nor a fair sample of the representation available in the community"). In contrast, Mr. Pochoda made such a showing in *Puente Arizona v. Penzone*, on which counsel rely (at 16) to justify their out-of-forum rates. *See* Ex. 3, Doc. 708-8, ¶ 6. *Puente Arizona* illustrates that counsel were aware of what they must show, and they failed to do so.[1]

Counsel offer no affidavit about unavailability apart from that of their own counsel.[2] An affidavit solely from the requesting party or its attorney is insufficient. *See Blum*, 465 U.S. at 895, n.11; *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, No.

---

[1] To the extent Mr. Pochoda suggests that the out-of-forum firms were necessary after Polsinelli withdrew, Pochoda Decl. ¶ 6, that is demonstrably false given that all four firms represented Plaintiffs as of the complaint filing date. *See* Doc. 1.

[2] Counsel offer an affidavit from Carol Sobel, who opines on the reasonableness of California-based rates—not on the unavailability of local counsel. She has no work experience in Arizona and cannot speak as to what hourly rates prevail in this forum. *See* Doc. 336-3 at 46; *see also* Doc. 336-2, ¶¶ 1–6, 9.

2:10-CV-01207-GEB-AC, 2016 WL 105252, at *2 (E.D. Cal. Jan. 8, 2016). Counsel have failed to prove the unavailability of local counsel and therefore are not entitled to out-of-forum rates.

**b. Using only 2018 hourly rates is improper.**

Fee awards at current rates are designed "to compensate prevailing attorneys for lost income that they might have received through missed investment opportunities as well as lost interest." *Gates*, 987 F.2d at 1406 (using current hourly rates because "plaintiffs' counsel presented evidence that their work on this case precluded them from engaging in substantial work on other cases that would have paid full market rates"); *see also King v. Palmer*, 906 F.2d 762, 769 (D.C. Cir. 1990). There is no evidence that counsel's work on this case precluded them from engaging in other opportunities.

Awarding fees at 2018 rates is also inappropriate here because attorney rates have dramatically changed since 2012—more than any interest award (currently at 2.45%) could substantiate. *See Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984) ("A court may . . . refuse to use current hourly rates on the grounds that increased rates reflect the attorney's increased knowledge and experience, not merely inflation."). For example, counsel use $350 for Mr. Lyall, but his hourly rate in 2012 was $175, which amounts to a 100% increase. *See Melendres v. Maricopa Cty.*, No. CV-07-02513-PHX-GMS, 2014 WL 11486806, at *3 (D. Ariz. Sept. 11, 2014). Stated differently, awarding 2018 hourly rates unfairly distorts the value of representation by attorneys with lesser experience. Mr. Castillo was a second year attorney when the Complaint was filed, but seeks a $445 hourly rate. Ms. Gomez and Mr. Holguin-Flores were still in law school when the Complaint was filed, but seek hourly rates of $360 and $330, respectively. These high rates are not commensurate with the value added by inexperienced counsel. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 663 (7th Cir. 1985) (using current hourly rates in protracted cases may produce a windfall because changes in hourly rates reflect not only inflation but also an attorney's increased experience and skill).

**c. Counsel's claimed rates are questionable.**

Counsel's rates are also extremely high in comparison to their claimed rates in other cases. Ms. Tumlin claims an hourly rate of $600 and Ms. Preciado claims $570 here, but they claimed rates of $325 and $300 respectively as of September 26, 2017, *see* Ex. 4, Doc. 111-4 ¶ 23. Mr. Danjuma claims an hourly rate of $445 here, but he claimed an hourly rate of $350 for work performed in 2017 and 2018 as of May 7, 2018. *See* Ex. 5, Doc. 529-1 at 13. Equally concerning, counsel told Defendants Mr. Viramontes' hourly rate was $640 in May 2018, Ex. 6, but now they claim it's $700. Doc. 336-6 ¶ 23.

**d. The 2016 State Bar survey establishes reasonable rates.**

The fluidity of counsel's rates is likely due to the fact that these rates are not based on any market value because counsel do not bill clients. As Judge Wake explained in *Baldwin v. D'Andrea*, "The true indicator of the reasonable value—the fair market value—of any lawyer's services measured by time is what that lawyer actually charges and actually collects." CV-13-08161-PCT-NVW, 2014 WL 11820245, at *2 (D. Ariz. July 24, 2014). "When the lawyer never intends to charge his own client but hopes for his adversary to pay upon a successful outcome," as is the case here, "a significant part of the discipline of market behavior is lost. A court must consider these and other factors." *Id.* at *3. Judge Wake further explained that where counsel did not charge any client, "the most persuasive measure of a market rate" for lawyers in civil rights litigation is measured by data from the State Bar of Arizona survey. *Id*. *Cf. Carson v. Billings Police Dep't*, 470 F.3d 889, 891–92 (9th Cir. 2006) (explaining how rates are determined by evidence of the relevant community, which is not necessarily what any one particular requesting individual billed as the community contains high and low chargers).

The 2016 State Bar of Arizona survey provides that $350 is the median and 75th percentile for attorneys practicing in human rights, and $350 is the 75th percentile for plaintiffs' attorneys practicing litigation. Ex. 7. Hourly rates of $350 or $400 are reasonable in the District of Arizona for the attorneys on this case with the most experience as ACLU-AZ recognizes. *See* Doc. 336-2 at 5, ¶ 12 (declaring the rates of

ACLU-AZ counsel as $350 or $400). Rates of $350 and $400 are too high for many of the attorneys here with lesser experience, however, because the median for plaintiffs' attorneys in litigation is only $299, and the median hourly rate in Maricopa County is $282. *Id.* Here, the Court should use the 2016 State Bar of Arizona survey to determine rates for the attorneys based on their years of experience and, in doing so, should cap hourly rates at $400 per hour. *See id.* ($400 per hour is above the 75th percentile for practicing attorneys (in every practice area) and above all medians—it is even more than the median for attorneys with over 40 years of experience).

**2. The hours sought are unreasonable.**

Counsel bear the burden of documenting the hours expended, and they must submit supporting evidence. *Gates*, 987 F.2d at 1397 (citing *Hensley*, 461 U.S. at 433–34); LRCiv 54.2(e)(2) ("The party seeking an award of fees **must** adequately describe the services rendered so that the reasonableness of the charge can be evaluated.") (emphasis added). This they failed to do. Their time entries are so vague it is difficult to analyze them, but what is apparent is that counsel claim excessive, redundant, and otherwise unnecessary time to such an extent that the Court may deny their request entirely. At a minimum, a significant reduction is necessary to bring the requested hours within the realm of reasonableness.

**a. Counsel unnecessarily overstaffed this case causing substantial inefficiency, redundancy and duplication of effort.**

Counsel request fees for **26 timekeepers (21 attorneys) at four different firms**: (1) MALDEF seeks time for four attorneys and one legal fellow; (2) ACLU-IRP for eight attorneys; (3) NILC for six attorneys and three non-attorneys; and (4) ACLU-AZ for three attorneys and one non-attorney. Ex. 1. MALDEF, ACLU-IRP, and NILC each request over 1,800 hours. *Id.* It was completely unnecessary to have four firms, let alone over 21 attorneys, work on the case.[3] It was also completely unnecessary to have so many senior

[3] MALDEF states that it cut time from other attorneys, but it failed to provide any detail as to how much (or how little) had been adjusted. The same is true of ACLU-AZ who excluded Mr. Pochoda's time without revealing what time, if any, had actually been

attorneys on the matter. Exhibit 1 illustrates the blatant overstaffing—there were **at least 13 senior attorneys** performing the majority of the work.

Not even counsel know who was in charge. Apparently, both ACLU-IRP's Ms. Newell and NILC's Ms. Tumlin served as lead counsel. Doc. 336-12, ¶ 7; Doc. 336-19, ¶ 10.[4] At the same time, Mr. Espiritu was "NILC's main staff attorney on the case" with "substantial or lead responsibility for NILC's work on motions and briefing." Doc. 336-19, ¶ 15. ACLU-IRP requests almost 600 hours for Ms. Newell, over 380 hours for Ms. Sun, over 240 hours for Mr. Tan, and over 210 hours for Ms. Martinez-Olguin. Doc. 336-13 at 63. Meanwhile, NILC requests over 550 hours for Mr. Espiritu while also seeking over 430 hours for Mr. Joaquin, over 175 hours for Ms. Tumlin, over 175 hours for Ms. Preciado, over 180 hours for Ms. Broder, and over 120 hours for Ms. Cheer. Doc. 336-21 at 2. There was no need for six attorneys from NILC to each spend hundreds of hours on this case. *Id*. Staffing the matter in this manner makes no sense, particularly considering that all of these NILC timekeepers are senior attorneys, there were three other firms who also staffed senior attorneys, and Mr. Espiritu, Ms. Preciado, and Ms. Tumlin all have about the same years of experience. *Id*.

"Efficient division of labor and assignment of tasks to lower-cost providers is appropriate and required." *Baldwin*, 2014 WL 11820245, at *4. Counsel failed to delegate. Their time entries reveal that multiple senior attorneys reviewed, drafted, revised, and commented on the same pleadings and papers. Had the matter been appropriately staffed, lesser experienced attorneys would have spent the most amount of time because they should have been doing the most time-intensive tasks (at lower rates), and the more senior attorneys should have been operating in a more advisory role. Only one or two senior attorneys should have been directing the work overall and supervising one or two junior attorneys. *See Baldwin*, 2014 WL 11820245, at *4 ("[c]laiming substantial fees for three senior attorneys, and some fees for a fourth . . . well exceeds

---

recorded for his participation, which counsel only describe as he "consulted regularly" regarding strategy. Doc. 336-24, ¶ 10.

[4] Ms. Sun served as lead counsel for a short period while Ms. Newell was on leave.

what is reasonably charged to one's own clients"); *see also Agster v. Maricopa Cty.*, 486 F. Supp. 2d 1005, 1015 (D. Ariz. 2007) ("The Court finds that only a finite amount of work requires lawyers in the senior associate or junior partner category. Associates at a lower rate should perform the remainder of the work.").

Counsel's duplication of effort is reflected by multiple attendance at events, preparation, regular communications among the multiple lawyers, other activities, and the aggregate claim. Counsel claim to have reduced time from their request to eliminate some duplication. Only 1 of the 4 firms, however, provided the time entries recorded by timekeeper *before* the imposition of this billing judgment. Doc. 336-21 at 2 shows NILC's totals before and after its billing judgment. NILC's attempt did little to eliminate redundancy and duplication of effort. It only eliminated about 100 hours[5] from its almost 2,000 hour request—nothing close to the type of reduction needed to actually account for the significant overstaffing and duplication of effort that occurred as a result of NILC staffing six senior attorneys on this matter.[6] Because the other three firms have failed to provide task-billed time entries for each timekeeper before any reductions, there is no way to determine whether their billing judgment was reasonable.

Despite counsel's purported adjustments, the request remains significantly overstated because they continue to request time for multiple attorneys when the task did not require them. Counsel count as many as three NILC attorneys per event, *see* Doc. 336-19, ¶ 38, one or two MALDEF attorneys per event, *see* Doc. 336-6, ¶ 22, one or two ACLU-IRP attorneys per event, *see* Doc. 336-12, ¶ 59, and ACLU-AZ attorneys. For example, they request a total of 4.7 hours for seven attorneys for the January 11, 2013 telephonic conference (Ex. 8 at 6) that occurred from 4:03 pm to 4:46 pm per the Court's transcript. It is unreasonable to recover for so much time at these and other conferences

[5] The reduction amount is unclear as NILC's summary indicates the amount is 113.6 hours but adding the "zeroed" line item amounts indicates only 105.6 hours.

[6] The only other information provided quantifying billing adjustments is ACLU-IRP's reduction of 182.1 hours from two timekeepers. *See* Doc. 336-12, ¶ 59. Even if this reduced those timekeepers' hours by 20% and 25% as the affidavit states, the reduction represents less than 10% of the total hours requested by ACLU-IRP, which fails to sufficiently account for the duplication of effort.

because counsel did not need that many attorneys at those events. A client would never pay for that many attorneys. Counsel claim 210.9 hours for time at depositions and hearings, but when adjusting the entries to award time for only one or two attorneys per event, that time reduces to 131.0 hours. *See* Ex. 8. Similarly, when counsel's entries are adjusted to count only one or two attorneys for certain client calls or meetings, the time reduces by 50%. *See* Ex. 9.

Counsel's affidavits generally fail to describe the "case-related contributions of each attorney for whom" each firm claims fees as LRCiv 54.2(d)(4)(A) requires, but where they do attempt to delineate who did what, the affidavits only make it clear that attorneys duplicated effort. For example, Ms. Gomez's affidavit fails to describe the case-related contributions of each attorney for whom MALDEF claims fees. *See* Doc. 336-6. Rather, it just declares that Mr. Viramontes and Mr. Castillo "worked on" the case without any detail as to what they specifically did. *Id.*, ¶¶ 8, 11. Ms. Gomez's affidavit also establishes that she and Mr. Holguin-Flores worked on the exact same things—"proceedings before the United States Supreme Court, settlement discussions, and this fee motion," *id.*, ¶¶ 14, 17, which illustrates the duplicative nature of the request.[7] *See also* Doc. 336-24, ¶¶ 11–12 (declaring Ms. Flood and Mr. Lyall worked on the same tasks).

Ms. Newell's affidavit is similarly deficient. Although Ms. Newell declares she "participated substantially in all aspects of the instant litigation," Doc. 336-12, ¶ 7, she fails to describe her involvement with any further detail. She declares that both Mr. Tan

[7] Ms. Gomez does not explicitly attest that she "has reviewed and has approved the time and charges set forth in the task-based itemized statement," MALDEF's Exhibit A, as LRCiv 54.2(d)(4)(C) requires. Instead, she merely states that she consulted with co-counsel and conferred with her supervisor in an attempt to eliminate some time. *Id.*, ¶ 22. Ms. Gomez has only practiced law for five years and spent most of that time in New York. *Id.*, ¶ 5. She only became admitted in California in 2017. *Id.*, ¶ 12. She started working at MALDEF in 2016, but did not work on this case until early 2017 while it was on appeal. *Id.*, ¶¶ 12, 14. Given Ms. Gomez's limited experience practicing in Arizona or California, and her limited involvement with this case, her statement that "[i]n her judgment" the time sought by MALDEF for work on this matter, which spans from 2012 to 2018, "was necessary and reasonable" holds little weight. She has not and cannot personally attest that she approves of the time and charges incurred because she lacks the requisite experience and knowledge both of this case and other comparable matters. Thus, she lacks foundation to attest to reasonableness here.

and Ms. Sun "played a substantial role" in the litigation at times without any further clarity. *Id.*, ¶¶ 23, 39. Mr. Danjuma and Ms. Martinez-Olguin "worked on" the case. *Id.*, ¶¶ 43, 48. Without more, counsel fail to prove that all of this work and/or "substantial" involvement was not duplicative. *See also* Doc. 336-19, ¶¶ 19, 29 (declaring Ms. Preciado and Ms. Cheer were both "heavily involved" on the same/similar tasks).

Counsel's time entries are also incredibly vague. This vagueness makes it impossible to identify and exclude all redundancies created by the overstaffing. A significant reduction is necessary to account for the readily apparent overstaffing that led to substantial duplication of effort and inefficiency. *See Puente Ariz.*, 2017 WL 4805116, at *4 (finding 49% reduction entirely warranted given the duplication of effort); *Baldwin*, 2014 WL 11820245, at *5 (reducing certain timekeepers by 50%). Before applying this reduction, however, the Court should exclude certain time entries altogether.

**b. Time for clerical/administrative tasks is not recoverable.**

"[T]asks which are clerical in nature are not recoverable." *Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, CV-12-02119-PHX-JAT, 2016 WL 5118316, at *16 (D. Ariz. Sept. 21, 2016) (quotations and citations omitted). Clerical tasks include docketing, filing, organizing, printing, and downloading documents. *See id.* "Courts have previously found the following tasks to be clerical: calendaring activities, scheduling depositions, bates labeling documents, reviewing court notices, communicating with court staff, scheduling, informing a client that a document has been filed, and informing a client of a hearing date." *Zabriskie v. Fed. Nat'l Mortgage Ass'n*, CV-13-02260-PHX-SRB, 2017 WL 5957907, at *5 (D. Ariz. Mar. 27, 2017) (citing cases); *see also Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 521 (W.D. Va. 2016) (describing additional clerical tasks).

Counsel's request includes over 230 hours of clerical or administrative tasks. Ex. 10. There are multiple entries for distributing the filings to counsel, updating the file, compiling attorney time records, and other administrative tasks like organizing documents. *Id.* Counsel even included time spent on entering a representation agreement, including the signing of that agreement. *Id.* (citing Doc. 336-7). Clients do not pay for

these tasks that all law firms must perform to do business. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Thompson v. Ariz. Movers & Storage Inc.*, CV-17-03819-PHX-DGC, 2018 WL 2416187, at *3 (D. Ariz. May 29, 2018) (unreasonable to include time for clerical tasks including "[r]eceive fee agreement, sign, set up file" and "[c]omplete summonses and cover sheet, finalize lawsuit, and file"); *Leuzinger v. Cty. of Lake*, C 06–0398 SBA, 2009 WL 839056, at *4 (N.D. Cal. Mar. 30, 2009). *Cf. Hensley*, 461 U.S. at 434. Time for administrative tasks should be excluded.

**c. Counsel's time sheets are unreliable.**

For events with a recorded duration, like depositions and hearings, some of counsel's time entries exceed the event's length. For example, on November 8, 2013, Jorge Castillo block-billed 8 hours for attending two depositions. Ex. 8 at 3. The combined time for these depositions was 4.3 hours based on the deposition transcripts. This entry and others reflecting a known overstatement are highlighted in yellow on Exhibit 8.

As another example, NILC's request includes 0.6 hours on July 8, 2014 for "Review D's filing re: vacatur." It should not have taken 0.6 hours to review Defendants' July 8, 2014 motion to vacate (Doc. 280) because this 7-page document contains less than 3 pages of substantive argument. A reasonable amount of time to review Doc. 280 is 0.1 hours, not 0.6 hours. Other time entries in the request may be overstated but Defendants and the Court have no way to tell from the vague descriptions.

Counsel claim to have eliminated time for media-related tasks. Some such time remains. Ex. 11. "An award of attorneys' fees should not include amounts for contact with the media." *Agster*, 486 F. Supp. 2d at 1016 (citation omitted). Counsel's request also includes some entries, that while vague, describe time spent on matters unrelated to this case. Ex. 12. The descriptions for many time entries are so vague that one cannot tell whether the time was actually spent on a task related to this case or some other matter, and even assuming it relates to this matter, one cannot assess whether the time was reasonable.

The fact that the above-described entries exist calls into question the reliability of the time sheets. As does the fact that counsel's figures have changed.

In early 2018, Defendants told counsel they would need to review documentation supporting their fee request to evaluate a potential settlement. Northup Decl. ¶ 11. Counsel refused to provide Defendants with supporting time entries or documents. *Id.* Instead, they simply stated their hourly rates, hours, and total fees of $3,235,250. *Id.*; Ex. 6. Now, their claim has increased by about $37,000, and not all of the hours and hourly rates provided a few months ago are the same. *Compare* Ex. 1 *with* Ex. 6. For example, counsel increased Ms. Newell's hours by over 200 hours from the letter (Ex. 6) to the Motion, and her time entries reflect only about 6 hours in 2018. Doc. 336-13 at 84.

Evidence suggests that, for at least some time entries, Counsel created the entries in their time sheets after-the-fact as opposed to recording detailed descriptions when the work was performed. After Defendants asked for task-billed details in spring 2018, *see* Northup Decl. ¶ 11, counsel communicated about "preparing" itemized hours. Doc. 336-21 at 17 ("email co-counsel next steps in preparing line by lines of attorney hours and also costs for fee petition"). In preparing the fee application, NILC revised its timesheets and included time doing so in its requested fees. Doc. 336-21 at 5 ("review and revise NILC internal time sheets and lodestar"). The request includes 1.6 hours on July 10, 2018 to "edit time entries for late 2017 and 2018." *Id.* at 7. Shortly before that, NILC determined its entries needed additional detail. *Id.* at 36 ("Review timekeeping spreadsheet for typos, **addtl detail needed**") (emphasis added); *id.* ("Editing ADAC time sheet **to insert participant names to phone calls**" and "Reviewing and editing ADAC time and costs (entries 1722 to end)") (emphasis added). Despite declaring that he kept contemporaneous records, Mr. Joaquin's time entries claim compensation for 5.9 hours in June 2017 to compile time records. Doc. 336-21 at 35 ("Compile time records from handwritten records," "Compile time records," and "Complete compiling records").

Had Mr. Joaquin actually recorded his time contemporaneously with the work's performance, there would have been no need to spend almost six hours in June 2017

compiling time records.[8] Likewise, had counsel properly described their time contemporaneously, there would have been no need for anyone to go back after-the-fact and compile time or edit entries to add details.[9] Federal courts recognize that attempts to re-create time entries, even if attempted in good faith, are little more than guesses because it is impossible to accurately reconstruct old billing entries. *Lamonaca*, 157 F. Supp. 3d at 520; *see also Hensley*, 461 U.S. at 438 n.13 (affirming 30% reduction for lack of contemporaneous time records).

**d. Counsel's vague descriptions fail to satisfy LRCiv 54.2(e).**

LRCiv 54.2(e) required counsel to adequately describe the services rendered so that the Court can evaluate reasonableness. Counsel failed to do this for every time entry. The vast majority of the entries are incomplete and fail to sufficiently describe the service rendered for the time requested. Time entries like "research," "document review," "work on discovery," and "trial preparation" are vague warranting a reduction in the fee award. *Lamonaca*, 157 F. Supp. 3d at 520. As are entries reading simply "trial preparation," "organize case files," and "appellate brief." *Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc.*, CIV.A. 2:05-2782-MBS, 2015 WL 4469765, at *10 (D.S.C. July 21, 2015). These are the very types of descriptions rampant in counsel's time sheets. *See* Ex. 13 (identifying vague time entries).

Exhibit 13 also shows some entries are block-billed. "When counsel engage in block billing by grouping several tasks together, it is difficult for a court to evaluate the

[8] Ms. Newell declares that she recorded her time contemporaneously. Doc. 336-12, ¶ 57. It is curious that she does not make the same declaration as to the other ACLU-IRP timekeepers. She merely states, "It is the regular practice of attorneys at the ACLU-IRP to maintain contemporaneous time records for all cases that are potentially fee-generating using a computer-based system." *Id*. This is not the same as saying that all time entries underlying ACLU-IRP's request are based on records kept by each timekeeper contemporaneously with the work's performance.

[9] Mr. Danjuma's time sheet shows that he failed to task-bill his time contemporaneously. Many entries have a precise number of hours (e.g., "1," "2," "7") and others round to the nearest 0.25 hour. Doc. 336-13, Ex. I-8. Time should have been recorded to the nearest tenth of an hour. The first page is illustrative—14 of the 30 entries are for tasks on which he purportedly spent exactly 1 hour. Doc. 336-13 at 110. Two others are vague descriptions of research violating LRCiv 54.2(e)(2)(B). *Id*. On another page, he has six entries of 7 hours each and three entries of 6 hours each. *Id*. at 113.

reasonableness of each individual task within the entry." *O'Neal v. Am.'s Best Tire LLC*, CV-16-00056-PHX-DGC, 2017 WL 1311670, at *6 (D. Ariz. Apr. 5, 2017) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). Counsel's block-billed entries violate LRCiv 54.2(d)(3) and 54.2(e) and warrant a substantial fee reduction. *See id.* (reducing block-billed entries by 25%); *see also Massage Envy Franchising LLC v. Doc Mktg. LLC*, CV-15-02129-PHX-DLR, 2016 WL 5464594, at *3 (D. Ariz. Sept. 29, 2016) (collecting Ninth Circuit cases endorsing a 20% fee reduction for block billing).

Counsel's failure to adequately document the time comprising their request should eliminate any award. In fact, a district court has found that NILC's billing entries, like those at issue here, were so vague that they did "not constitute adequate documentation of the necessity or reasonableness of those efforts." *Cacho v. Gusman*, CIV.A. 11-225-SS, 2014 WL 4854737, at *5 (E.D. La. Sept. 29, 2014) ("[W]ork reflected on their billing records was clearly excessive and duplicative, appearing primarily to consist of vague brainstorming and seemingly unnecessary and repetitive review and consultations."); *see also Daly v. Hill*, 790 F.2d 1071, 1079–80 (4th Cir. 1986) (deducting virtually all hours described only as "conference with client"); *Kraszewski v. State Farm Ins.*, 36 F.E.P.Cas. 1371, 1378, 1984 WL 1027 (N.D. Cal. 1984) (similar).

Like the entries in *Cacho*, counsel's time entries here show repeated, vague co-counsel conferences and seemingly unnecessary and repetitive review and consultations among counsel. *See* Ex. 14. The request includes over 830 hours for vague, conferences among counsel. *Id.* Counsel conferred among themselves multiple times every month from September 2012 to February 2015. *Id.* All of this co-counsel conferring time on Exhibit 14 should be eliminated as in *Cacho*.

In addition to regularly engaging in seemingly unnecessary conferences among themselves, counsel routinely engaged in unnecessary "moot" sessions before hearings, <u>even telephonic hearings on routine matters</u>. *See* Ex. 15. It was entirely unnecessary to "moot" all events, especially those like the January 11, 2013 telephonic *status conference* and the June 13, 2013 telephonic *scheduling conference*. *Id.*

The Court should eliminate all time identified on Exhibits 13 and 14. The entries must be clear on their face, and the Court need not review the docket or other information to determine the entry's purpose. *See King v. State Bd. of Elections*, No. 95 C 827, 2003 WL 22019357, at *4 (N.D. Ill. Aug. 19, 2003) (stating it is "not the Court's job" to review the dockets or pleading files to find out what was being prepared at that time).

To account for Defendants' objections to the amount of hours, an award should utilize 1,329 hours or less. *See* Ex. 16. Exhibit 24 presents lodestar calculations based on this amount of hours and Arizona hourly rates for the Court's consideration. Alternatively, the Court could impose a significant across-the-board reduction to account for the rampant vagueness and other objectionable items in counsel's time entries because it is difficult, if not impossible, to determine what amount of time was reasonable for even the necessary tasks due to the combination of problems described herein. *See Lamonaca*, 157 F. Supp. 3d at 520; *Grogg v. Gen. Motors Corp.*, 612 F. Supp. 1375, 1382 (S.D.N.Y. 1985) (50% reduction).

**3. The lodestar amount should be further adjusted downward.**

Because it is the taxpayers who must bear the expense of this litigation, the lodestar should be further reduced. *See Goddard v. Babbitt*, 547 F. Supp. 373, 378 (D. Ariz. 1982) ("[T]he Court feels that it is required under the law to award attorney's fees to the applicants. While all of the attorneys involved in the prosecution of this action did a first-rate job, the requests of the applicants will be slashed in recognition that it is the taxpayer who must bear the expense of this litigation. Accordingly, plaintiffs will receive approximately half of what they prayed for.").

Although Plaintiffs ultimately prevailed, they prevailed on a tenuous preemption ground; a ground on which not only this Court disagreed (but was compelled to follow), but also on which six Ninth Circuit judges vehemently disagreed. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 957–62 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1279 (2018). For these reasons, an additional reduction is necessary to prevent a windfall.

## II. THE REQUESTED NON-TAXABLE EXPENSES ARE UNREASONABLE.

Counsel overreach in their request for non-taxable expenses. Several costs call into question the integrity and veracity of their Motion. For example, NILC requests "airfare to Arizona for filing of drivers license case Litigation AZ Driver License" on Nov. 26, 2012, but their local firm (Polsinelli) filed the Complaint electronically. Ex. 23. Plaintiffs also seek costs for "Reimbursement for 7th Circuit CGS - MI DACA," which is unrelated to this litigation. *Id.* Counsel also include $26,438.59 of costs that do not have supporting receipts in violation of the obvious verification requirement in LRCiv 54.2(e)(3). *See* Ex. 22. In addition to the glaringly problematic costs above, counsel's request includes the following unrecoverable items:

- $4,941.12 in impermissible expert witness fees, Ex. 17. *Gates*, 987 F.2d at 1408.
- $445.83 in administrative overhead expenses, including dinners for attorneys working late and dinners with clients, Ex. 18;
- $6,827.19 for lobbying advocacy to the United States Solicitor General for five attorneys over a week-long trip to Washington, D.C., Ex. 19;
- $737.91 in costs involved in the Ninth Circuit Appeal, Ex. 20, which are untimely and not permitted here under Ninth Circuit Rule 39-1.4;
- $8,702.66 in vague entries, including but not limited to unexplained "site visits," Ex. 21, in violation of LRCiv 54.2(e)(2); and
- $2,057.60 in unnecessary or unrelated expenses. Ex. 23.

In sum, at least $50,150.90 of the expenses are not recoverable. *See* Exs. 17–23.

## III. CONCLUSION

The vast majority of counsel's time entries violate the rule requiring sufficiently detailed itemized task-billed time entries kept contemporaneously. It is difficult, if not impossible, for the Court to eliminate all unnecessary, excessive, and duplicative time entries given the way in which counsel presented their time. Counsel's request can and should be denied in its entirety for counsel's failures. At a minimum, any award should be based on no more than 1,329 hours at the hourly rates prevailing in this forum, which can be determined from the 2016 State Bar survey, and that lodestar should be further reduced for the reasons set forth above.

DATED this 10th day of August, 2018.

FENNEMORE CRAIG, P.C.

By /s/ *Douglas C. Northup*
Douglas C. Northup
Sean T. Hood
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2018, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jennifer Chang Newell
Cecillia D. Wang
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Email: jnewell@aclu.org
Email: cwang@aclu.org

Lee Gelernt
Michael Tan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad St., 18th Floor
New York, NY 10004
Email: lgelernt@aclu.org
Email: mtan@aclu.org

Kathleen E. Brody
ACLU Foundation of Arizona
3707 N. Seventh St., Suite 235
Phoenix, AZ 85014
Email : kbrody@acluaz.org

Linton Joaquin
Karen C. Tumlin
Shiu-Ming Cheer
Nora A. Preciado
Nicholas Espiritu
National Immigration Law Center
3450 Wilshire Blvd., Suite 108-62
Los Angeles, CA 90010
Email: joaquin@nilc.org
Email: tumlin@nilc.org
Email: cheer@nilc.org
Email: preciado@nilc.org
Email: espiritu@nilc.org

Tanya Broder
National Immigration Law Center
2030 Addison Street, Suite 310
Berkeley, CA 94704
Email: Broder@nilc.org

Julia A. Gomez Hernandez
Andrés Holguin-Flores
Mexican American Legal Defense and Educational Fund
634 S. Spring Street, Suite 1100
Los Angeles, CA 90014
Email: jgomez@maldef.org
Email: aholquin-flores@maldef.org

/s/ *Jennifer Fortner*
An employee of Fennemore Craig, P.C.

14085550