**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Arizona Dream Act Coalition; Jesus Castro-Martinez; Christian Jacobo; Alejandro Lopez; Ariel Martinez; Natalia Perez-Gallagos; Carla Chavarria; and Jose Ricardo Hinojos,

Plaintiffs,

v.

Janice K. Brewer, Governor of the State of Arizona, in her official capacity; John S. Halikowski, Director of the Arizona Department of Transportation, in his official capacity; and Stacey K. Stanton, Assistant Director of the Motor Vehicle Division of the Arizona Department of Transportation, in her official capacity,

Defendants.

No. CV 12-02546-PHX-DGC

**ORDER**

Plaintiffs have filed a motion for attorneys' fees and non-taxable expenses. Doc. 336. The motion is fully briefed, and oral argument has not been requested. The Court will grant the motion in part.

## I. Legal Standards.

A party requesting an award of attorneys' fees and non-taxable expenses must show that it is eligible for an award, entitled to an award, and requesting a reasonable amount. *See* LR Civ 54.2(c). Plaintiffs request attorneys' fees under 42 U.S.C.A § 1988, which allows "the court, in its discretion," to award reasonable attorneys' fees to a prevailing

party in federal civil rights cases. "[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) (internal quotation marks omitted).

To determine the reasonableness of attorneys' fees, federal courts generally use the "lodestar" method. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). The Court must first determine the initial lodestar figure by taking a reasonable hourly rate and multiplying it by the number of hours reasonably expended on the litigation. *Blanchard*, 489 U.S. at 94 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court next "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "These factors are known as the *Kerr* factors." *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Such an adjustment is appropriate "only in rare or exceptional circumstances." *Cunningham v. City of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

## II. Discussion.

Plaintiffs request $3,173,480.10 in attorneys' fees and $89,174.63 in nontaxable expenses. These amounts include $71,504.00 in fees and $2,497.39 in costs for the ACLU-Arizona ("ACLU-AZ") (Doc. 340 ¶¶ 15-16); $878,007.50 in fees and $13,549.78 in costs for the Mexican American Legal Defense and Educational Fund ("MALDEF") (Doc. 339-8 ¶¶ 15-16); $1,108,491.50 in fees and $35,295.09 in costs for the National Immigration Law Center ("NILC") (Doc. 339-4 at 2); and $1,115,477.10 in fees and $37,832.37 in costs for the ACLU Immigration Rights Project ("ACLU-IRP") (Doc. 339-10 ¶ 24). Doc. 339 at 17.[1]

Defendants make three arguments for reducing Plaintiffs' attorneys' fees: (1) Plaintiffs fees on appeal are not recoverable, (2) Plaintiffs' fee request is unreasonable, and (3) Plaintiffs' nontaxable expenses are unreasonable.

---

[1] Plaintiffs originally requested a total $3,361,936.39. Doc. 336 at 17. The reduced amount above reflects Plaintiffs' billing judgments after Defendants' response.

### A.    Plaintiffs' Appeals Fees.

Defendants argue that 818 hours of work for appeals to the Ninth Circuit and the United States Supreme Court should be excluded from Plaintiffs' fee request because appeals fees must be filed with the Ninth Circuit clerk.  Doc. 337 at 2.

The case law on this topic is somewhat unsettled.  In *Cummings v. Connell*, 402 F.3d 936, 940, 947-48 (9th Cir. 2005), the Ninth Circuit held that attorneys' fees for appeals under § 1988 must be filed in the Ninth Circuit pursuant to Ninth Circuit Rule 39-1.6.  The fees may be determined by the District Court only after the Ninth Circuit transfers a fee request under Rule 39-1.8.  *See id*.  But in *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 884 (9th Cir. 2005), the Ninth Circuit allowed the district court to award attorneys' fees in a copyright case for all "services that contributed to the ultimate victory in the lawsuit," including two petitions for certiorari, despite Rules 39-1.6 and 39.18.  *Twentieth Century Fox* relied on *Cabrales v. Los Angeles*, 935 F.2d 1050 (9th Cir. 1991), which remanded a case to the district court for an award of all appellate fees under a § 1988 attorneys' fee request.  429 F.3d at 884; *see also Cabrales*, 935 F.2d at 1053(remanding to district court for attorneys' fees related to the petition for certiorari and for Ninth Circuit appeal to determine that attorneys' fees were owed).

In both *Twentieth Century Fox* and *Cabrales*, the prevailing party filed its initial request for attorneys' fees in the United States Supreme Court, and the Supreme Court referred the parties to the district court for an award.  *Id*. at 1051-52; *Twentieth Century Fox*, 429 F.3d at 875.  Further, in *Cabrales*, the Ninth Circuit specifically directed the district court to determine the prevailing party's fees on appeal.  935 F.2d at 1053.

This case is like *Cummings*, where the parties first sought appellate fees from the district court.  402 F.3d at 947.  The Court will follow *Cummings* and not consider the request for fees on appeal.  Plaintiffs' fee request will be reduced by 818 hours, consisting of 9.6 hours for ACLU-AZ, 291.9 hours for ACLU-IRP, 156.5 hours for MALDEF, and 360 hours for NILC.  *See* Doc. 338-8 at 9.

## B.    Reasonableness of Plaintiffs' Fees.

### 1.    Hourly Rates.

Reasonable hourly rates are determined "by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community"). The relevant community is generally the forum in which the district court sits. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).

Defendants make four arguments on the reasonableness of Plaintiffs' proposed hourly rates: (1) out-of-forum rates are inappropriate here; (2) raters should not be based solely on current rates; (3) Plaintiffs' claimed rates are unreasonable; and (4) the Court should adopt the 2016 Arizona State Bar survey rates. Doc. 337 at 3-6.

### a.    Out-of-Forum Rates.

Plaintiffs seek to recover out-of-state hourly rates for attorneys from ACLU-IRP, NILC, and MALDEF. Doc. 336 at 15; *see also* Docs. 336-6 ¶ 24, 336-12 ¶ 68, 336-19 ¶ 31. Defendants argue that Plaintiffs should be limited to Arizona rates because they have not shown that it was necessary to hire out-of-state counsel. Doc. 337 at 3-4.

Rates outside the relevant community can be used if "local counsel was unavailable, either because they are unwilling or unable to perform or because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The prevailing party must demonstrate that local counsel was not available. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Plaintiffs argue that local counsel lacked the experience, expertise, or specialization to handle the case. Plaintiffs provided a statement from Daniel Pochoda that from "his own experience with other complex impact and constitutional litigation matters, there were

not sufficient lawyers or law firms in Arizona with the necessary expertise, capacity, and willingness to take on a case of this magnitude and complexity." Doc. 336-25 ¶ 6. Mr. Pochoda further stated that ACLU-AZ could not have handled this case alone, as there were only two other lawyers on staff besides Mr. Pochoda. *Id*. ¶ 5.

The Court finds that Plaintiffs have submitted persuasive evidence that there was insufficient local counsel with the willingness and requisite "degree of experience, expertise or specialization required to handle properly the case." *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Mr. Pochoda served as legal director of the ACLU-AZ for years and is familiar with the local legal market and the pool of civil rights attorneys available to handle a case like this. *See Puente Ariz. v. Penzone*, No. CV-14-01356-PHX-DGC, 2017 WL 4805116, at *2 (D. Ariz. Oct. 25, 2017).

The Court will, however, cap out-of-state attorneys' fees at $750 per hour. The Court concludes that this cap is reasonable given the fact that rates above this level represent premium billing in large legal markets.

### b. Current Rates.

Plaintiffs argue that 2018 rates are reasonable for all attorneys because the protracted litigation caused a delay in payment. Doc. 339 at 7. Defendants argues in response that Plaintiffs have presented no evidence that their work on this case precluded them from engaging in other opportunities, and 2018 rates are inappropriate here because the attorneys' rates have changed dramatically since 2012. Doc. 337 at 5.

The Court may consider a rate adjustment for a complex civil rights action where compensation is received several years after services are rendered. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). The Court may use an interest adjustment or may base the fee award on current rates rather than historic rates. *Gates*, 987 F.2d at 1406; *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor."). A fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received

through missed investment opportunities as well as lost interest." *Id.* (citing *Jenkins*, 491 U.S. at 283 n.6). Where the case has lasted a few years, current rather than historical rates may be an adequate remedy for delayed payment. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 663 (7th Cir. 1985); *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1152 (2d Cir. 2010) (current rate is appropriate for two to three years of litigation).

Because this case has been in litigation since 2012, awarding an adjustment for delay in payment is appropriate. *See Gates*, 987 F.2d at 1406 ("[T]he length of the delay in payment is a consideration in deciding whether an award of current rather than historic rates is warranted.".) Further, Plaintiffs have provided several affidavits supporting their assertion that their organizations had to forgo taking other cases because of this litigation. *See* Doc. 339 at 8. For example, Linton Joaquin avowed that as general counsel for NILC, he participates in case selection and knows that NILC had to decline other critical civil rights matters "specifically as a result of [their] existing commitments in the instant case." Doc. 339-1 ¶ 23. Similarly, Julia Gomez of MALDEF and Jennifer Chang Newell of the ACULU-IRP both stated that their organizations declined litigation in relation to their work in this litigation. Docs. 339-8 ¶ 4, 339-10 ¶ 3.

The Court will award current rates. Plaintiffs' counsel forewent other work that might well have paid them sooner, and, while rates have increased, the increase compensates Plaintiffs' counsel for income they forewent over the last six years. This approach comports with the purpose of § 1988 to encourage lawyers to accept meritorious civil rights cases. *Ohio-Sealy Mattress*, 776 F.2d at 662.

### c. Defendants' Other Arguments.

Defendants argue that Plaintiffs' rates are high in comparison to their claimed rates in other cases. For example, Ms. Tumlin of NILC claims an hourly rate of $600, but claimed a rate of $325 as of September 26, 2017. Mr. Danjuma of ACLU-IRP claims an hourly rate of $445 but claimed an hourly rate of $350 for work performed in 2017 and 2018. Doc. 337 at 6. Moreover, Plaintiffs informed Defendants that MALDEF attorney

Mr. Viramontes's hourly rate was $640 in May 2018, but now claim it is $700. Doc. 337 at 6.

Defendants also argue that the Court should use the 2016 State Bar of Arizona survey to determine rates for the attorneys based on their years of experience and, in doing so, should cap rates at $400 per hour. Doc. 337 at 6-7.

The Court looks at the reasonableness of an hourly rate only as it relates to the prevailing market rate in the community for similar services of lawyers of "reasonably comparable skill, experience and reputation." *See Chalmers*, 796 F.2d at 1210. In this case, the Plaintiffs have submitted two affidavits from attorneys considered experts in nonprofit legal practice and lodestar calculation, supporting the reasonableness of their charged hourly rates. *See* Docs. 336-2, 336-4; *see also United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (Affidavits regarding "rate determinations in other cases, particularly those setting a rate for the fee applicant, are satisfactory evidence of the prevailing market rate."). The Court finds that these affidavits generally establish the reasonableness of the requested rates. Defendants have produced no arguments or evidence challenging the validity of these opining experts. Further, Defendants' argument regarding Arizona Bar rates is unavailing considering the Court's decision to award out-of-forum rates. Thus, the Court will not alter Plaintiffs' fee award on these bases.

### d. Conclusion.

In sum, the Court will award the out-of-forum rates but will cap the award at $750 per hour. Otherwise, the Court will keep Plaintiffs' current rates. The new adjusted charge, factoring in reduction for appeals work, will be $2,014,277.35, including $935,941.35 for ACLU-IRP; $780,924.00 for MALDEF; $879,355.50 for NILC; and $68,276.00 for ACLU-AZ.

### 2. Requested Hours.

Defendants make four arguments: (1) Plaintiffs unnecessarily overstaffed this case; (2) Plaintiffs improperly seek reimbursement for clerical and administrative tasks;

(3) Plaintiff's timesheets are unreliable; and (4) the timesheets are too vague to satisfy Local Rule 54.2(e). Doc. 337 at 7-16.

### a. Overstaffing.

Defendants argue that Plaintiffs' request for fees for 21 attorneys and five non-attorneys, across four different law firms, is unnecessary; that 13 of the 21 attorneys were senior lawyers; that multiple lawyers from the same firm attended events together; and that Plaintiffs' affidavits fail to describe the "case-related contributions" for each attorney. Doc. 337 at 7-10.

The Court's "inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." *Moreno*, 534 F.3d at 1115. The Court should refrain from imposing its own judgment for how to "operate a law firm" or "if different staffing decisions might have led to different fee requests." *Id*. "The difficulty and skill level of the work performed, and the result achieved – not whether it would have been cheaper to delegate the work to other attorneys – must drive [the Court's] decision." *Id*. The party requesting the fees bears the burden.

The Court may reduce the number of hours awarded because the lawyers performed unnecessarily duplicative work, but "some duplication is inherent in the process over time. *Id*. "By and large, the court should defer to the winning lawyer[s'] professional judgment as to how much time he was required to spend on the case, after all, he won, and might not have had he been more of a slacker." *Id*.

This litigation took six years and often involved litigating in several courts simultaneously. The attorneys researched, drafted, and argued a preliminary injunction motion, a motion to dismiss, cross motions for summary judgment, a motion for a protective order, two rounds of discovery, two appeals involving multiple rounds of briefing to the Ninth Circuit, and two rounds of briefing to the Supreme Court. *See* Doc. 336 at 9. This case required a sophisticated understanding of immigration law, administrative law, and constitutional law. *Id*.

The complexity of this case is reflected in Plaintiffs' declarations. For example, NILC explains that it used three attorneys to perform distinct tasks. Doc. 339-1 ¶ 19. And although their tasks may have overlapped, the work could not have been performed by a single lawyer because of "numerous rounds of depositions and the tight scheduling around depositions." *Id.* NILC emphasizes that this was particularly true when one attorney was pulled off to compel discovery after Defendants asserted the deliberative process privilege. *Id.*

MALDEF asserts the unique role that each attorney played. Doc. 339-8 ¶ 5 (discussing roles of a senior attorney who advised more junior attorneys). MALDEF's supplemental declaration also notes that over the length of the case some attorneys needed to step in after assigned attorneys left the nonprofit or prepared for other trials. *Id.*

ACLU-IRP explains how the different attorneys concentrated on specific constitutional issues, worked during different procedural aspects of the case, and covered for each other's parental leave breaks. Doc. 339-10 ¶¶5-10. Further, they assert that the complexity, scope, and length of this case required a high level of coordination and collaboration, so it was necessary for the parties to have two lead counsels. Doc. 339-1 ¶ 21.

In their initial motion, Plaintiffs exercised billing judgment and reduced the hours of any attorney beyond the first one or two from each organization who attended a hearing or deposition and beyond two or three from each organization who participated in conferences among co-counsel. Doc. 336 at 20. Plaintiffs completely eliminated the hours of attorneys, law students, and other administrative staff with few total hours expended on the case. *Id.*; *see Missouri v. Jenkins*, 491 U.S. 274, 285-89 (1989) (courts may award fees for work done by law students).

In their reply, Plaintiffs further reduced their hours so that no more than one attorney from each organization billed for each hearing or deposition, unless attorneys from that organization argued at the hearing. Docs. 339 at 12; Docs. 339-1 ¶ 15 (eliminating 88.4 hours); 339-8 ¶ 6 (eliminating 4.1 hours for Ninth Circuit argument); 340 ¶ 5. Plaintiffs

also eliminated any hours spent on internal conferences by billing no more than two attorneys for any meetings, conference call, or argument preparation session. *Id.*; *see* Docs. 339-1 (eliminating 144.3 hours); 339-8 ¶ 7 (eliminating 5.5 hours). ACLU-IRP further reduced all billing hours by 20 and 25 percent for two of its attorneys. Doc. 339-10 ¶ 17. ACLU-AZ reduced hours spent reviewing time entries to prepare for Plaintiffs' motion for attorneys' fees. Doc. 340 ¶ 6.

After reviewing the disputed entries and considering Plaintiffs' billing judgment reductions, the Court cannot conclude that Plaintiffs seek recovery for excessive hours or needless duplication. *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort"). Further, the Court defers to the judgment of the non-profits involved, which are "not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees." *Moreno*, 534 F.3d at 1112. The Court will not reduce Plaintiffs' hours on this basis.

### b. Clerical and Administrative Tasks.

Filing, transcript, and document organization time entries that are of a clerical nature generally should be subsumed in firm overhead rather than billed at paralegal or attorney rates. *See Missouri v*, 491 U.S. at 288 n.10*; Nadaraja v. Holder* 569 F.3d 906, 921 (9th Cir. 2009). The Court should reduce hours for clerical tasks billed at an hourly rate. *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992). Courts have previously found calendaring activities, scheduling depositions, bates labeling documents, reviewing court notices, communicating with court staff, scheduling, informing a client that a document has been filed, and informing a client of a hearing date to be clerical. *See Zabriskie v. Fed. Nat'l Mortgage Assoc.*, No. CV-13-02260-PHX-SRB, 2017 WL 5957907, at *5 (D. Ariz. March 27, 2017) (collecting cases).

In the reply, NILC eliminated an "overwhelming majority of the tasks that Defendants' labeled [as] clerical or administrative work." Doc. 339-1 ¶ 12. MALDEF agreed to reduce a total of 1.6 hours on this basis. Doc. 339-8 ¶ 11. ACLU-AZ also

exercised billing judgement by omitting 60.2 hours that Defendants argue are not compensable clerical tasks. Doc. 340 ¶ 7-8. The ACLU-IRP exercised billing judgment by reducing the number of hours billed for tasks such as reading and responding to correspondence, and reviewing and editing drafts of pleading, but it does not specify which hours it reduced. *See* Doc. 339-10 at 5.

Accordingly, the Court has reviewed the remaining entries that Defendants claim are clerical and reduces them as follows: (1) 4.1 hours for MALDEF (*see, e.g.*, Doc. 338-5 at 16 (.3 hours for filing initial disclosure); *id*. (.5 hours set up meetings with plaintiffs); *id*. at 17 (.8 hours for call with 9th Cir.)); (2) 1.2 hours for ACLU-IRP (*see, e.g.*, Doc. 338-5 at 18 (.2 hours for call regarding schedule); *id*. at 21 (.3 hours searching for deposition transcripts); *id*. at 23 (.4 hours call to court regarding discovery conference)); (3) and 7.7 hours for ACLU-IRP that should be billed at a lower rate *(see, e.g.*, 338-5 at 9 (.7 hours for lead attorney billed for inputting cite checking edits to MTD opp. from law student); *id*. at 12 (7 hours for attorney preparing index and designation of confidential documents); *see also Missouri v*, 491 U.S. at 288 n.10 (administrative tasks should be billed by paralegals instead of lawyers)).

ACLU-AZ argues that a number of paralegal entries and a .4-hour phone call flagged by Defendants required skill, experience, and judgment. Doc. 340 ¶ 8. The Court agrees and will allow these entries. MALDEF argues that many of the identified tasks are in fact compensable but fails to elaborate on any specific descriptions that will help the Court understand these time entries. Doc. 339-8 at 9. Contrary to Defendants' arguments, the Court will retain entries related to preparation of co-counsel contracts and agreements as these are not improper clerical entries. *See Zabriski*e, No. CV-13-02260-PHX-SRB, 2017 WL 5957907, at *5 (concluding that a phone call about fee agreement and emails about contract are not clerical in nature)

Thus, the Court will reduce Plaintiffs' total fee award to account for the billing of clerical activities. The Court will reduce MALDEF's hours by 4.1 and ACLU-IRP's hours by 1.2. The Court will also charge a reduced rate for 7.7 of ACLU-IRP's hours.

### c.    Unreliable Timesheets.

Defendants argue that many of Plaintiffs inappropriately billed time for media-related tasks.  *Id*.  Defendants also argue that Plaintiffs created time entries after the work was performed.  Doc. 337 at 13.

MALDEF and NILC have eliminated media-related charges and charges unrelated to the case that were erroneously included.  *See* Docs. 339-1 ¶ 10, 339-8 ¶ 12.  Therefore, the Court will address only Defendants' argument regarding contemporaneous time records.[2]

Defendants point to the fact that between settlement in early 2018 and the current fee request, Ms. Newell of ACLU-IRP increased her reported hours for the relevant period by more than 200 hours.  *See* Doc. 337 at 13 (citing Doc. 336-13 at 84).  Defendants also take issue with the fact that Ms. Newell failed to assert that all timekeepers kept contemporaneous records at ACLU-IRP, and another attorney, Mr. Danjuma of ACLU-IRP, only reported time records in whole numbers, which seems unlikely considering time should be kept by the tenth of the hour.  Doc. 337 at 14 nn. 8-9.

Defendants also point to NILC entries that show Plaintiffs created the timesheets after the work was performed, including entries where NILC staff reviewed and revised their timesheets (*see* Doc. 336-21 at 5), edited their time entries (*id*. at 7), reviewed their spreadsheets for typos but indicated "addtl detail needed" (*id*. at 36), and inserted participant names in entries involving phone calls (*id*.).  Doc. 337 at 13.  Further, Mr. Joaquin of NILC claimed to keep contemporaneous records, but submitted several time entries for "compiling time records."  *Id*.

Generally, fees are not compensable if the attorneys failed to maintain time records contemporaneously.  *See Hensley*, 461 U.S. at 438 n.13 (affirming thirty percent reduction for lack of contemporaneous time records); *New York State Assoc. for Retarded Children*, 711 F.2d at 1148.  Lawyers must keep records of work performed and time expended.  It

---

[2] In this portion of their response, Defendants also argue that Plaintiffs spent too much time reviewing a specific document.  Doc. 337 at 12.  As the contested time entry does not seem unreasonable, the Court rejects the argument.  *See Moreno*, 534 F.3d at 1112.

is not enough to recreate the records from documents, calendars, and other extrinsic evidence. *Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 150 (S.D.N.Y. 2015).

In reply, NILC attests that timesheets were completed contemporaneously, but attorneys spent time transferring meticulous handwritten timesheets to electronic format. Doc. 339-1 at 4. Federal courts have found this practice to be acceptable. *See Citrin v. Erickson*, 918 F. Supp. 782, 803-04 (S.D.N.Y. 1996) (affidavits which are reconstructions of contemporaneous records satisfy the requirement). To further address Defendants' arguments, NILC eliminated time entries where the senior attorney compiled his handwritten records. *Id.* NILC does not respond to Defendants' assertion that some time entry descriptions indicate that NILC staff edited the entries after the work was performed. The Court agrees with Defendants that these records indicate some improper re-creation of time sheets.

ACLU-IRP explains that the settlement and final timesheets were different because time slips from fall 2012 and summer 2013 were inadvertently excluded from the settlement timesheet but were input in the final timesheets attached to Plaintiffs' motion for attorneys' fees. Doc. 339-10 ¶¶14-15. Ms. Newell, as a representative for ACLU-IRP, indicates that it is the regular practice of attorneys at ACLU-IRP to maintain contemporaneous time records for all cases that are potentially fee-generating using a computer-based system. *See* Doc. 336-12 at 17. The Court finds this sufficient to address Defendants' assertions regarding contemporaneous record keeping.

But the Court cannot accept Mr. Danjuma's total-hour billing practice. ACLU-IRP states that it reduced his time by 20 percent (Doc. 339-10 ¶ 17), but the Court will eliminate it entirely. Mr. Danjuma certainly did not work exclusively in whole-hour increments, which means his time records are not accurate. The Court will not credit inaccurate time records.

Because the Court agrees with Defendants that some timesheets were improperly created or elaborated after the work was performed, but it is impossible to discern which entries were affected, the Court will reduce Plaintiff NILC's fee request by five percent.

*See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("[W]hen faced with a massive fee application the court has the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure[.]").  The Court will also deduct all of Mr. Danjuma's hours from ACLU-IRP's fee award.

### d.  Vague Timesheets.

Defendants argue that Plaintiffs' timesheets lack the specificity required under Local Rule 54.2.  Doc. 337 at 14; *see also* L.R. Civ. 54.2(e)(2) ("The party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated.")

The relevant portion of Local Rule 54.2(3) provides that time entries must record "[t]he time devoted to *each individual unrelated task performed on such day*[.]"  L.R. Civ. 54.2(e)(1)-(2) (emphasis added).  The rule provides examples, including that telephone conferences must identify all participants and the reason for the telephone call; legal research must identify the specific legal issue researched and, if appropriate, the pleading or document the research was for; and preparing a pleading or other document should include the activities associated with its preparation.  *Id.*

Plaintiffs bear the burden of submitting adequately documented fee applications.  *See In re Equity Funding Corp., of Am. Sec. Litig.*, 483 F. Supp. 1303, 1327 (C.D. Cal. 1977).  Excessively vague time descriptions are disfavored because they "inhibit the court's reasonableness review."  *Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 520 (W.D. Va. 2016).  Examples of vague entries include "document review," "work on discovery," and "trial preparation."  *Id.*

In reply, MALDEF reduced its fees by $2,759 for time entries that it agreed were too vague to provide a sufficient description of the attorneys' work.  Doc. 339-8 ¶ 8.  Plaintiffs provide no other response.

The Court agrees with Defendants that many time entries violate Local Rule 54.2(e)(2) because they are too vague for the Court to fully determine the reasonableness

of the charges. The majority of the noted entries describe the attorneys' work generally without identifying the specific legal issues being researched. *See, e.g.*, Doc. 338-6 (noting entries for edits to documents, draft legal research for documents, research, discovery, Ninth Circuit Brief); *see also Goddard v. Babbitt*, 547 F. Supp. 373, 377 (D. Ariz. 1982) (eliminating entries that were "described in such a cursory manner, that it is impossible for a reviewer to determine whether the time was justified"); *Pure Wafer, Inc. v. City of Prescott*, No. CV*13-08236-PCT-JAT, 2014 WL 3797850, at *6 (D. Ariz. July 29, 2014) ("The Local Rule is clear in that a time entry for legal research must identify foremost the 'specific legal issue researched,' and only secondarily the corresponding pleading or document, 'if appropriate.'").

Defendants further argue that Plaintiffs' attorneys' fees are too vague because Plaintiffs' counsel engaged in block billing, in violation of Local Rule 54.2. Doc. 337 at 14-15. According to Defendants, many of the block-billed entries overstate the amount of time for hearings and depositions. *Id.* at 12. When counsel engages in block billing by grouping several tasks together, it is difficult for a court to evaluate the reasonable of each individual task within the entry. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). This type of block billing is not inappropriate per se when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

NILC argues that the Defendants' block-billing concerns are moot because its billing judgment has already reduced all block-billed entries by 20 percent. Doc. 339-1 ¶ 18. MALDEF asserts that Defendants' argument is in error because the depositions last for longer than the "on-the-record" time to account for breaks, and before and after meetings. Doc. 339-8 ¶ 6. Thus, the challenged entries were not inappropriately block billed or overstated.

The Court finds that the majority of the entries identified by Defendants as block billed do not violate Local Rule 54.2(e)(2) because they are sufficiently related "to permit

the Court to evaluate the reasonableness of the corresponding attorney work hours billed." *See Pure Wafer Inc.*, No. CV*13-08236-PCT-JAT, 2014 WL 3797850, at *5; *see e.g.*, Docs. 338-6 at 9 (4 hours to revise and edit response to MTD/MSJ and review statement of facts); Doc. 338-6 at 2 (10.4 hours to draft reply brief and edit SOF response); *id.* (9.4 hours to edit SJ brief and SOF, cite check, and attention to filing). The Court also agrees with Plaintiffs regarding alleged block billing and deposition or hearing times.

Defendants have filed over 50 pages of time entries it has identified as impermissibly vague. As indicated above, the Court agrees that many of these timesheets are impermissibly vague but not all of them. Additionally, the Court does not agree that Plaintiffs participated in improper block billing. Thus, rather than perform an "item by item accounting of the" disallowed hours, the Court will deduct 60 percent of Defendants requested reduction from Plaintiffs attorneys' fees. *See Gates*, 987 F.2d at 1399 (citing *In re "Agent Orange" Product Liability Litig.*, 818 F.2d 226, 237038 (2d Cir. 1987); *see also* Doc. 338-6 at 54 (requesting a reduction of 1813.6 hours).

### 3.  **Lodestar Rate Reduction.**

Defendants argue that the lodestar should be reduced further because taxpayers bear the expense of this litigation. *See* Doc. 337 at 16. Defendants cite to *Goddard v. Babbitt*, 547 F. Supp. 373, 378 (D. Ariz. 1982), but it does not fully support their position. Goddard involved a constitutional challenge to a reapportionment of Arizona congressional districts. *Id.* at 374. The court in *Goddard* mentioned taxpayers bearing the litigation costs but reduced the lodestar fees based on two of the *Kerr* factors – the nature of the attorney-client relationship and what had been gained in the suit. *Id.*; *see also Kerr*, 526 F.2d at 70. The court concluded that the lawyers were actively involved in the political process, and the direct beneficiaries of that suit were politicians who would eventually seek reelection. *Id.* The court determined that it needed to consider the public's perception of these benefits when determining the appropriate attorneys' fees and because the public would ultimately pay for the attorneys' fees. *Id.* The Court does not find a similar situation here, nor do the

Defendants argue that any of the *Kerr* factors should reduce the fee. Thus, the Court will not reduce Plaintiffs' fees on this basis.

Defendants also argue that Plaintiffs' fees should be reduced because they prevailed only "on a tenuous preemption ground." Doc. 337 at 16. For reasons stated in previous orders, this Court disagrees with the Ninth Circuit's preemption conclusion. But prevailing parties may collect attorneys' fees "if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing the suit." *Farrar v. Hobby*, 506 U.S. 103, 108 (1992) (quoting Hensley, 461 U.S. at 433); *see also Twentieth Century Fox Film Corp.*, 429 F.3d at 884 ("[P]laintiffs are to be compensated for attorney[s]' fees incurred for services that contribute to the ultimate victory in the lawsuit." (quoting *Cabrales*, 935 F.2d at 1052)). Defendants cite no authority to suggest that a district court may reduce a fee award because it disagrees with the court of appeals' controlling decision.

### 4. Conclusion.

In sum, the Court finds it proper to defer to Plaintiffs' billing judgment responding to Defendants' overstaffing arguments. But the Court will reduce the total fee for non-contemporaneous time entries and vague time entries. The new fee award will be $1,890,567.30, which includes $63,236.00 for ACLU-AZ; $573,030.40 for MALDEF; $659,755.43 for NILC; and $595,545.47 for ACLU-IRP.

### C. Reasonableness of Non-Taxable Expenses.

### 1. Vague and Unverified Costs.

Defendants argue that several of the non-taxable expenses requested by Plaintiffs are vague, unrelated to the litigation, or not properly supported by receipts. Doc. 337 at 17. Defendants urge the Court to omit a total of $8,702.66 in vague time entries, including several entries tied to unexplained "site visits." *Id*.

Out-of-pocket litigation expenses are reimbursable as part of the attorneys' fees. *United Steelworkers of Am.*, 896 F.2d at 407. Reasonable expenses include all out-of-pocket expenses that would "normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery for costs of service of case

documents, fee for defense expert deposition, postage, investigator, copying costs, hotel bills, meals, messenger service, and employment record reproduction."). Under Local Rule 54.2(e)(3), incurred expenses must be itemized with particularity, and the parties requesting fees should attach copies of "applicable invoices, receipts and [or] or disbursement instruments."

In their reply, NILC reduced costs to $283.60 for one attorney's airfare to Phoenix. *See* 339-1 ¶ 26. Defendants specifically targeted this expense as unnecessary. NILC also provided more detail for the two expenses flagged as vague. *See* Doc. 339-1 at 6. NILC argues that they have submitted receipts and verification for the majority of expenses listed as unverified. Doc. 339-1 ¶ 25. To the extent they have omitted receipts, they attached some to their supplemental declaration. *Id.*; Doc. 339-7.

ACLU-IRP provided a docket location for receipts for each unverified expense identified by Defendants except for two, which were erroneously omitted. Doc. 339-10 ¶ 19. The two omitted receipts have been attached to their supplemental declaration. *Id.*; *see also* Doc. 339-11. ACLU-IRP also provided a chart explaining expenses that Defendants identified as vague and reduced their total billing costs by $627.91 for duplicative airfare charges and vague cost entries. *See* 339-10 ¶ 20.

MALDEF provided a list of Defendants' contested unverified responses and docket location where each questioned receipt or reimbursement instrument could be found. *Id.* ¶ 10; *see e.g.*, Doc. 336-8 at 26. MALDEF also explains the use of the term "site visit" for many of its entries in place of a name of a specific attorney claiming the expense. Doc. 339-8 ¶ 9. This was a general description used for all invoices and receipts converted to an excel spreadsheet by a legal assistant, but MALDEF's lead attorney confirms that all charges were related to traveling in connection with this matter. *See* Doc. 339-8 ¶ 9.

ACLU-AZ provided descriptions for six items. Doc. 340 ¶ 10. Four of the six are reimbursements that ACLU-AZ used to reduce its costs. *Id.* ¶ 11. Of the remaining two, ACLU-AZ opted to eliminate these items and reduce their total costs by $32.00. *Id.* ¶ 12.

Considering the documentation and billing judgment provided by Plaintiffs, the Court finds Plaintiffs' costs reasonable and compliant with the Local Rule. The Court will not reduce Plaintiffs' costs on this basis.

## 2. Other Non-Compensable Costs.

Defendants seeks to exclude four additional types of costs: (1) $737.91 in costs involved in the Ninth Circuit appeal; (2) $445.83 in administrative overhead expenses, including dinners for attorneys working late and dinners with clients; (2) $6,827.19 for lobbying advocacy to the United States Solicitor General for five attorneys over a week-long trip to Washington D.C.; and (3) $4,941.12 in impermissible expert witness fees. Doc. 337 at 17.

First, as discussed above the Court agrees with the reduction for work on appeal and will reduce Plaintiffs' costs by $737.91. *See Cummings*, 402 F.3d at 947.

Second, Defendants point to no case law disallowing expenses for client meetings and working dinners, and the Court is unaware of any authority that requires such exclusion. On review of the Defendants' identified expenses, the Court does not find any that should be excluded.

Third, Plaintiffs argue that meeting with the Solicitor General was an essential part of Supreme Court advocacy necessary to encourage the Solicitor General to file a brief consistent with Plaintiffs' legal position. Doc. 339 at 17. Even if this may be true, this entire trip is essentially an expense relevant to appeals work and not the litigation before this Court. The Court will exclude $6,827.19 from Plaintiffs' costs. *Cummings*, 402 F.3d at 947.

Finally, Plaintiffs argue that Defendants have incorrectly characterized their fees to depose Defendants' expert as "expert witness fees." Doc. 339 at 17. Fees for expert witnesses are generally not available under § 1988 as a nontaxable cost. *See Gates*, 987 F.2d at 1407-08. But this does not include fees for deposing the opposing side's experts. *See Harris*, 24 F.3d at 20. Thus, Plaintiffs are correct, and the Court will not reduce Plaintiffs' expenses on this basis.

As a result of Defendants objections, the Court will reduce Plaintiffs' expenses by $7,565.10 ($737.91 for appeals costs and $6,827.19 for United States Supreme Court Trip). Plaintiffs' total costs will now be $81,609.53, which includes $2,497.39 for ACLU-AZ, $13,036.18 for MALDEF, $30,990.22 for NILC, and $35,085.74 for ACLU-IRP.

**D.     Fees for Reply**.

Plaintiffs request the following fees associated with replying to Defendants' arguments: (1) MALDEF requests $14,418, which includes 41.4 hours for two attorneys (Doc. 339-8 ¶ 14); (2) ACLU-IRP requests $13,817.35, which includes 27.82 hours for two attorneys (Doc. 339-10 ¶ 23); and (3) ACLU-AZ requests $4,165.00, which includes 11.9 hours for one attorney (Doc. 340 ¶ 14).

Under § 1988, prevailing parties are entitled to compensation for time expended on their application for attorneys' fees. *See Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981) ("It would be inconsistent with the purpose of [section 1988] to dilute an award of fees by refusing to compensate an attorney for time spent to establish a reasonable fee." (quoting *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978)).

Plaintiffs expended 81.12 hours to reply to Defendants' arguments. All together Defendants' arguments consisted of 342 pages, which included twenty-four detailed exhibits challenging specific time entries. In light of the scope and vigor with which Defendants responded to Plaintiffs' motion, the Court cannot conclude that Plaintiffs' reply fees are unreasonable. *See Golden Gate Audubon Soc'y, Inc. v. U.S. Army Corps. of Eng'rs*, 732 F. Supp. 1014, 1022 (N.D. Cal. 1989) ("Defendants are certainly entitled to litigate a fee petition with vigor, but they cannot be heard to complain if that vigorous advocacy requires plaintiffs to expend substantial amounts of time in response."); *Pure Wafer, Inc*. No. CV-13-08236-PCT-JAT, 2014 WL 3797850, at *12 (finding the requested fees not excessive considering the defendant's challenge to a substantial portion of the fees). Therefore, the Court will award Plaintiffs the requested fees on reply.

**E.     Conclusion.**

The Court will award $1,890,567.30 in attorneys' fees and $81,609.53 in non-taxable expenses to Plaintiffs. This amount includes $63,236.00 in fees and $2,497.39 in costs for ACLU-AZ; $573,030.40 in fees and $13,036.18 in costs for MALDEF; $659,755 in fees and $30,990.22 in costs for NILC; and $594,545.47 in fees and $35,085.74 in costs for ACLU-IRP.

**IT IS ORDERED:**

1.     Plaintiff's motion for attorneys' fees and non-taxable expenses (Doc. 336) is **granted in part** as set forth above.

Dated this 10th day of December, 2018.

David G. Campbell
Senior United States District Judge